# STATE OF OREGON *v.* MURRAY.

INSANITY.—Upon the plea of insanity, if it appear that the accused, although suffering from mental derangement, has capacity and reason sufficient to enable him to distinguish between right and wrong as to the particular act he did; that he had a knowledge and consciousness that it was wrong and criminal, and would subject him to punishment, the defense will fail.

IDEM.—The defense of insanity, under the laws of this State, will be of no avail unless it is proven beyond a reasonable doubt that the accused, at the time of the commission of the act, labored under a diseased state of mind, and that it was so excessive that it overwhelmed his reason, conscience and judgment.

APPEAL from Multnomah County.

*A. Lenhart,* for appellant.

*W. B. Gilbert,* for respondent.

By the Court, THAYER, J.:

This appeal is from a judgment of conviction of the appellant by the circuit court for the county of Multnomah for the crime of murder in the first degree. The indictment charged the appellant with having, on the 6th day of January, 1884, in said county of Multnomah, purposely and of deliberate and premeditated malice, killed Alfred Jenke by shooting him with a shotgun. The trial upon said indictment was had in January, 1884, and the principle ground of defense was that appellant, when he committed the act, was insane. The trial of the case occupied some ten days, during which time a great number of exceptions were taken, but the appellant's counsel has presented only a comparatively few of them for our consideration on the appeal. They were taken to the rulings of the circuit court in excluding testimony offered by appellant's counsel upon the

28

trial, and in admitting testimony offered on behalf of the state, and objected to by appellant's counsel. Also, in the refusal by the court to charge the jury as requested by appellant's counsel. These various exceptions are presented by what the counsel for the prisoner and the state term a bill of exceptions, but it is hardly entitled to that appellation. Instead of a statement of the exceptions with so much of the evidence or other matter as is necessary to explain them, and no more, as provided by the civil code, the whole testimony and proceedings of a ten days' trial, including newspaper articles and every incident connected with the trial, have been thrown into a mass and certified here for our examination. Such a practice is not only unlawyer-like, but is an imposition upon this court. The transcript includes nearly four hundred pages legal cap writing, when it should not include more than thirty. It presents an unwieldy document, imposes a difficult labor upon this court to search out and ascertain the points assigned as error, and creates an unnecessary expense upon the county in which the trial was had. It is a shameful procedure, and the judges of the circuit courts should interfere and put a stop to such kind of practice. The points of error contended for by the counsel for the appellant are :

First—The exclusion of the evidence of John L. Smith, Ed. Mendenhall and H. T. McGuire, in regard to particular conversations they respectively had had with the appellant.

Second—The exclusion of the evidence of J. H. Lyon as to what he knew of the mental temperament of the appellant; as to whether it was mild or otherwise, and as to what his opinion was concerning the sanity or insanity of the defendant on the 5th day of January; the evidence of E. G. Brandstedter as to whether he had the same opinion then concerning appellant's sanity or insanity that he had

before; the evidence of Almon Smith as to how appellant's conduct upon the night of the homicide compared with the conduct and actions of a rational man, and as to whether he remembered any conversations he had had with appellant about appellant's wife, and the statement of them.

Third—The admission of the opinions of Dr. O. P. S. Plummer, Samuel Smith and William Hickey as to the sanity of the appellant. Another ground of error claimed is, that the evidence was insufficient to justify the verdict. The refusal of the court to give the sixth instruction asked for by appellant's counsel, seems to be the only one especially noticed in the brief submitted. The instruction was as follows:

"If the jury find from the evidence that the defendant committed the crime charged, and at the time of the commission of the act he was not of sound mind, but was affected with a delusion, and such delusion was the efficient cause of the act, and that he would not have done it but for the delusion, then he must be acquitted."

The insufficiency of the evidence to support the verdict was claimed upon the ground that under the evidence the killing could have been no more than murder in the second degree, and in view of that point the court was asked to charge the jury that "from the evidence in this case the defendant cannot be convicted of murder in the first degree" and that "if the jury find from the evidence that the defendant committed the act complained of and, without knowing the defendant to be Alfred Jenke at the time of the shooting, then in no event can the defendant be convicted of murder in the first degree."

When a person is charged with the commission of a crime,

he is entitled under the law to interpose as a defense a plea of insanity; that is, an unsoundness of mind, a derangement of intellect, and if it be established upon the trial that the accused, at the time of the commission of the act was laboring under such a defect of reason as not to know that the nature and quality of the act he was doing was wrong, the defense will be made out; but if it appears that the accused, although suffering from mental derangement, had capacity and reason sufficient to enable him to distinguish between right and wrong, as to the particular act he did; that he had a knowledge and consciousness that it was wrong and criminal and would subject him to punishment, the defense will fail. (Greenleaf's Evidence., sec. 372.)

The question has often arisen as to the degree of proof required to establish insanity in such a case. It has been held to be sufficient if the jury were reasonably satisfied by a preponderance of the evidence. That question, however, in this state is settled by statute, which provides, that "when the commission of the act charged as a crime is proven, and the defense sought to be established is the insanity of the defendant, the same must be proven beyond a reasonable doubt." (Criminal Code, sec. 159.)

It necessarily follows, therefore, that the defense of insanity under the laws of this state will be of no avail unless it is proven beyond a reasonable doubt that the accused, at the time of the commission of the act, labored under a diseased state of mind, and that it was so excessive that it overwhelmed his reason, conscience and judgment.

If the jury in this case had found that the appellant, at the time he shot Jenke, was not of sound mind; that he was laboring under a delusion; that it was the efficient cause of his doing the act; and that he would not have done it but for the delusion, it would not necessarily have followed that

he should have been acquitted.  He still may have been con-
scious that he was doing a criminal act that would subject
him to punishment.   If he knew enough to know that he
was violating the law by the commission of the act, it will
not excuse him, although he had surrendered his judgment
to some mad passion which for the time being was exercis-
ing a strong influence over his conduct.   If the appellant's
counsel had included in the said sixth instruction requested
to be given, the following:   "And at the time the appellant
did the act he had no knowledge of right and wrong respect-
ing it," there would have been less reason for its refusal.
But even then it would not have been correct under the pro-
visions of the statute referred to above.   The jury in such
a case must be satisfied beyond a reasonable doubt as to the
insanity of the accused, and the proposed instruction should
have been framed so as to include the qualification imposed
by the said provision in order to entitle it to be given.
Besides, there is nothing in the evidence that would have
justified the jury in finding that the appellant was insane.
He had become jealous of his wife and it preyed upon his
mind.   He indulged in drinking intoxicating beverages, as
people often do when vexed and annoyed, and became in-
furiated and desirous of killing some one, and did not seem
to have much choice as to who it should be, provided it was
some one who should wait upon his wife.  ·Upon the evening of
the day of the homicide, his wife was at the masonic hall in
Portland attending a ball, and he was about the place vow-
ing vengeance against the man who should escort her home.
A part of the time he was in the ball-room, and at other
times was at a saloon across the street therefrom.   He was
evidently in a rage incited by jealousy and aggravated by
drink.   If he had been arrested by some policeman and
locked up for the night, it would most probably have

frustrated his murderous intentions, but as he was not interfered with by any one he was enabled to carry them out. He was doubtless in a frenzied condition of mind, occasioned by allowing his evil passions to control his actions. His whole demeanor indicated a violent state of anger which he made no effort to control. A jury would hardly be supposed to pronounce it a case of insanity, such as would, under the law, excuse a person for the commission of a homicide. The court will not undertake to decide upon the facts submitted to the jury, but when a refusal to instruct the jury is assigned as error it may properly look into the evidence before it in order to ascertain whether the party complaining has received any injury therefrom, and if it appear from the whole case before the court that the ruling could not have injured the party against whom it was made, it will not reverse the judgment, although the ruling was erroneous. But we have examined the charge given by the circuit court to the jury in reference to this question of insanity, and are of the opinion that it was fair and substantially correct. The jury were told that if they were satisfied that at the time the prisoner committed the act, he was laboring under such a defect of reason from disease of the mind as not to know the nature, quality or consequences of the act he was committing, or that if he did know it, that he did not clearly understand that what he was doing was wrong, then they should acquit him upon the ground of insanity. This was as far as the court could possibly go in favor of the appellant under the law. It was certainly as liberal as his counsel could reasonably ask. The point attempted to be made by the appellant's counsel that the evidence was insufficient to justify a verdict of murder in the first degree, is clearly untenable. The counsel contends that the evidence did not show such a deliberation and pre-

meditation as is necessary to constitute that degree of murder, and refers us to section 519, criminal code, the latter portion of which provides that "deliberation and premeditation, when necessary to constitute murder in the first degree, shall be evidenced by poisoning, lying in wait or some other proof that the design was formed and matured in cool blood, and not hastily upon the occasion." This clause of said section evidently requires that there shall be proof in such case that the accused not only designed the killing, but that the design was formed and matured in cool blood, and not hastily upon the occasion. In cases of poisoning or lying in wait, the facts themselves are sufficient proof that the design was so formed and matured. In this case there was clear proof of lying in wait. The circumstances proved at the trial strongly indicated that the appellant intercepted his wife and the deceased when going home from the ball, and deliberately shot deceased and shot at his wife; and it was shown by testimony that he had declared openly while the ball was going on that he would kill the man who should take his wife home that night. His counsel does not contend that the design was formed and matured hastily upon the occasion, or that it was not a deliberate and premeditated act ; but he claims that the evidence shows that the appellant did not intend the killing of the particular person he did kill. And the circuit court charged the jury that "if they had any reasonable doubt as to whether the intention might not have been to kill the defendant's wife, or some person other than Alfred Jenke, and that, missing his aim, the defendant killed Alfred Jenke by mistake, then the crime is murder in the second degree." I am unable to understand how the fact claimed by counsel and suggested by the court in the charge, could possibly have lessened the degree of appellant's guilt. That was not

the rule at common law. (Wharton's Amer. Crim. Law, sec. 965. And I cannot see that the statute has changed it. Providing for two degrees of murder does not necessarily change the rule. The peculiar characteristic of the crime is malice. That must exist in either case, but in the case of murder in the first degree it must have been deliberate and premeditated. The term "malice," however, as used in connection with the crime, "is not restricted to spite or malevolence, but is understood to mean that general malignity and recklessness of the lives and personal safety of others, which proceed from a heart void of a just sense of social duty, and fatally bent on mischief." (3 Greenl. Ev., sec. 144.)

The assassin who lays in wait, harboring in his bosom a murderous design to slay a human being, cannot extenuate his offense because he did not kill the particular person he designed to. All the circumstances constituting murder in the first degree are present, and if he is guilty at all he is guilty of that crime, and there is no more reason for lessening the degree of the crime in consequence of that circumstance than there would be in acquitting him out and out. He has exhibited the same malignity and recklessness in the one event he would have displayed in the other, and the consequences to society are just as fearful; but if the views of appellant's counsel and of the circuit court, as manifested in the part of the charge referred to, were correct, we would have no right to disturb the verdict of the jury. There was evidence in the case tending to show that the appellant intended to kill any man who should go home with his wife that night, irrespective of the person it might be, and their verdict that he intended to kill Jenke is final upon that point. The exclusion of the evidence of Smith, Mendenhall and McGuire, witnesses produced on behalf

of the appellant as to what was said in the respective conversations which they had with him, was not error. His counsel could not claim, as a matter of right, the privilege of calling out statements the appellant made in the various talks they had with him. The statute permitting the opinion of an intimate acquaintance to be given respecting the mental sanity of a person, does not contemplate that. The section referred to, section 696, Civil Code, provides that evidence may be given on the trial of the following facts:

"10     *     *     *     the opinion of an intimate acquaintance respecting the mental sanity of a person, the reason for the opinion being given."

Under this subdivision of the section, the inquiry will be first whether the witness is acquainted with the person, and the character of that acquaintance. Second, what the opinion of the witness is respecting the mental sanity of the person; and, third, the witness' reason for his opinion. The reason may be based upon the peculiar appearance of the person, his change of demeanor, the strange manner of his conversation, or any other singular feature he exhibits. Such inquiry does not necessarily extend to the subject of the conversation or to the words used by the parties to it, unless called out upon the cross examination. The appellant's counsel has cited us to several authorities in support of the right to call out the statements made in such conversations as they occurred. Among them is note 4 to §440, 1 Green. Ev., which says that "where the witness has had opportunities for knowing and observing the conversation, conduct and manners of the person whose sanity is in question, it has been held, upon grave consideration, that the witness may depose not only to particular facts but to

his opinion or belief as to the sanity of the party formed from such actual observations." The other authorities to which he refers do not seem to be in point, and I can not see that this goes farther than we have indicated above; the language quoted from the note implies no more than that the witness may describe the conversation, conduct and manner of the person whose sanity is in question. To undertake to detail all the conversations a witness has had with such person, or to give his statements literally or in substance, would be protracting a trial to an unnecessary length and be likely to elicit a great amount of irrelevant and immaterial matter. The substantive part of this character of evidence is the *opinion* of the witness that usually has been formed from many circumstances that would be difficult to describe, but they have impressed the mind of the witness and to a great extent have influenced his belief; the reason for the opinion may not be clear and satisfactory, but the fact that he has been an intimate acquaintance with the person, has been able to observe any striking difference in his manner and conduct to mark the changes exhibited and to compare his habits and actions with those of his past life, adds great weight to his testimony on that question. If the witness has discovered any singularity in the style of the person's conversation, an incoherency in his manner of talking, he can testify to it without detailing what was said at the time. There was no necessity of dragging out the trial of the case longer than it was. It certainly occupied time enough without that. The testimony of Lyon, Brandstedter and Almon Smith was properly excluded. The question to Lyon as to what he knew of the mental temperament of appellant, and as to whether it was mild or not; that to Brandstedter as to whether he had the same opinion then he had before concerning the sanity or insan-

ity of the appellant, and that to Smith as to whether he remembered any conversations he had with appellant about appellant's wife and what statements he made, so far as we are able to discover, were immaterial; and the question to Smith as to how the appellant's conduct upon the night of the homicide compared with the conduct and actions of a rational man, called for the opinion of a non-professional witness, which was not admissible, except under the circumstances provided for in the statute above referred to. The admission in evidence of the opinions of Dr. Plummer, Samuel Smith and William Hickey was objected to in each case upon the grounds of the incompetency of each of said witnesses to give an opinion upon the subject. The only question raised by the objection was as to whether these witnesses were intimate acquaintances of the appellant within the sense and meaning of said subdivision 10 of section 696 Civil Code; the meaning of the word "intimate" as used in said provision of the statute, is close friendship or acquaintance, familiarty. It is there employed to qualify the word acquaintance, and the legislature evidently intended by the terms "intimate acquaintance" that the witness, in order to be competent to give an opinion in such a case, should be more than a casual or an ordinary acquaintance of the person whose sanity was drawn in question. The preliminary examination of these witnesses disclosed the fact that each of them had been acquainted with the appellant for several years and been upon familiar terms with him. Dr. Plummer testified that he was an intimate acquaintance of the appellant; that he was engaged in the sale of drugs, paints, oil and glass, and that appellant had dealt with him for several years. Thought he had met him during the last year fifty times; that appellant had done work for him; had painted his barn; that he talked with

him probably a dozen times about the work while it was being done. Samuel Smith testified that he had been acquainted with the appellant about four years and a half; that he knew him very well; that during a time about three years before, he met him very often; that within the last year he had seen him every Sunday at a certain beer garden; had passed and repassed him on the street and had conversations with him often; talked with him at the beer garden and heard him talk with others; met him nearly every Sunday afternoon and evening during the past summer at the beer garden; noticed that he had a little girl with him at one time and a dog at another; thought they had been at a beer garden on as many as twenty Sundays.

William Hickey testified that he had been a policeman in Portland off and on for the last fourteen years; that he had known appellant since 1867; became acquainted with him about five years ago at the St. Louis hotel; was intimate with him; had lived near him; had met him a great deal, and had conversations with him every time he met him; had charge of the beat in which appellant lived.

The testimony of neither of these witnesses is entirely satisfactory as to his qualifications to give an opinion respecting the appellant's mental sanity. They each, however, show a state of facts from which it might be inferred that they severally, were such acquaintances as the statute prescribes; and the question as to whether or not they maintained that relation to the appellant had ultimately to be determined by the jury. The circuit court may have believed the jury better qualified to pass upon the question than the court was, and as the evidence tended to show that the witnesses were intimate acquaintances of the appellant, concluded to leave it to them. Again, the circuit court was a better judge of the question than this court can be. The

witnesses were before that court and it could form a better idea as to their competency in that particular than this court is able to, not having seen and heard them testify. In view of these circumstances we do not believe we would be justified in interfering with the conviction of the appellant upon this point. The appellant's counsel also urged at the hearing as an objection to the admission of the said opinions, that the reasons upon which they were formed were not given. That objection should have been made at the trial. The witnesses could have been required to give the reasons for their opinions, and if that were refused it should have been made a special ground of objection, which does not appear to have been done. A point has also been suggested in regard to the admission of evidence of appellant's excessive drinking during the year preceding the time of the homicide. That evidence may have been material to explain or account for appellant's change of conduct and peculiarity of manner during that time, regarded by his witnesses as evidence of his insanity, and we presume that it was admitted for that purpose. We are unable to discover any such error in the record as would require a reversal of the judgment of conviction, and we therefore affirm it.

Let the usual judgment of affirmance be entered herein applicable to this class of cases.