Smith, J.
At the January term, 1888, an indictment was presented to the court of common pleas, charging Lizzie McGuire and Mary Smith, in one count with the crime of larceny, in stealing a large number of gold chains, and in the second count, with receiving said goods, knowing them to have been stolen. The defendants having pleaded not guilty, elected to be tried separately. And at the April term, 1888, the plaintiff in error was tried, but the jury being unable to agree were discharged by the court, without having rendered a verdict, and a few days thereafter, at the same term, she was again tried, and found guilty on the first count of the indictment, and not guilty on the second. A motion for a new trial having been made and overruled, she was sentenced to imprisonment in the penitentiary. A bill of exceptions containing all the evidence offered during the impaneling of the jury, and on the trial of the case, the charges asked for and refused, and those given to the jury, with the various rulings as to the admission of the evidence, and as to proceedings had in the cause, was duly taken and signed by the court, and in the pe *553 tit-ion in error a great number of assignments of error have been máde, and we notice them substantially in the order in which they appear in the able briefs of counsel for the plaintiff in error.
1. It is claimed that there was not sufficient proof of the corpus delicti — that is, that in this case the property described in the indictment was stolen by any one. For convenience, we consider this question in connection with the one which alleges that the court errred in refusing to set aside the-verdict on the ground that it was not supported by the evidence.
2. During the argument of one of the counsel for the defendant to the jury, he sought to read to them, as a part of his argument, two decisions of the Supreme Court of Tennessee, on certain questions of law, which the bill of exceptions shows-arose in this case. It was objected to by the prosecuting attorney, and the court refused to allow them to be read to-the jury, to which defendant’s counsel excepted. Counsel then proposed to read them to the court in the hearing of the jury,, but the court informed him that it was unnecessary to do so, as he had done this three times on the preceding day during the trial of the case, (the jury not then having been present) which was the fact; but also stated that counsel might give to the jury, in his own words, the facts in the case, by way of illustration.
Was this action of the court erroneous, or was it a matter as-to which the court had a discretion; and if so, was it properly exercised? The question is an important one, as involving a question of practice which is liable to arise every day in the-trial of criminal cases, and if it is a right of a party to have this done, it is a substantial one, and one which should be protected and enforced by the court.
It is entirely clear that under our system of jurisprudence “ in all jury trials, it is the peculiar province of the jury to-determine the questions of fact, and that of the court to determine the questions of law presented, and in the trial of a criminal case, it is the duty of the jury to receive the law as determined by the court, and no juror can rightfully disregard the law, as declared in the instructions to the jury.”' *554 And that this has been so from the organization of the state, is manifest from the decisions of the supreme court, in 11 Ohio, 424; 29 Ohio St. 412; and 8 Ohio St. 131 (Robbins v. The State), the syllabus of which last case is above quoted. Such was the ■doctrine of the common law, and so continues in the states where that law prevailed, unless changed by statute. As stated in JBouvier Law Die., title “ Charge,” “ by statute in some states, the jury are constituted judges of the law as well as ■of the facts in criminal cases — an arrangement which assimilates the duties of a judge at once to those of a moderator of a small sized town meeting, and of the preceptor of a ■class of law students, besides subjecting successive criminals to a code of laws varying as widely as the impulses of successive juries can differ.” Under such a system of the ad■ministration of the law, we would be forced to the conclusion that it was the right of counsel to pursue the plan sought to be carried out in this. case. If there is no obligation of any kind resting upon the jury to receive the law from the court, it would seem to follow that they should be allowed to hear what counsel may read to them, or even have in their retirement such authorities as they may desire to consult, that thus they may come to what they may esteem the right conclusions, as to the legal principles involved in the case.
But does such right exist with us? The only reported case in our state with which we are familiar, which bears upon the question, is that of Legg v. Drake, 1 Ohio St. 286. It was there held that “on the argument of a cause before the court or jury, counsel has a right, by way of argument or illustration, either to read from a book a pertinent quotation or extract from a work on science or art, or other publication, adopting it, and making it a part of his own address to the jury; but not using it as evidence in the case.”
It must be conceded that it is a question not altogether free from doubt, whether this language is not broad enough to cover a case of this kind. My own practice while presiding in the trial of jury cases, was (under certain limitations and restrictions), to allow it to be do.ne to a reasonable degree, but with 'the caution and direction to the jury that they were bound to ■receive the law of the case from the court, and must not suffer *555 themselves to believe that what was thus read to them was the law, if it differed from that declared by the court. And this the trial court, in our opinion, has the discretion to do— but the difficult question is whether, in the light of the decision quoted, it has the discretion to refuse it.
We incline strongly to the opinion that such is the case. The practice of courts of reputation, and perhaps of a majority of them, to refuse this as a right, is an argument that it is the law. There is grave doubt whether, when the question is, what is the law which shall govern the case, legal authorities which are simply evidence of what the law is on a given point, are such works of science as are designated by those words used in the syllabus of the case referred to. Law books are cited and used as evidence of what the law on a given subject is, and it would seem to be a reasonable and the correct doctrine, that this evidence should be addressed to the court, upon which the law imposes the duty of ascertaining ■and determining that question, and not to the jury, which has no moral or legal right to settle it. But we see no objection to this being done in the hearing of the jury. And it was the right of counsel, subject of- course to the exercise of the reasonable discretion given to the court in the regulation of the argument, to read these cases to the judge, that he might understanding^ instruct the'jury on the important principle ■of law involved therein. But as the record shows, the same counsel, on the preceding day, had- read more than once, the same authorities to the judge in the same case, and he was not going beyond a proper discretion in declining to again hear them. We are unwilling, therefore, to say, in the absence of a more.direct ruling of the Supreme Court, that a judge is absolutely required to allow counsel to read law books to a jury, with a view of showing them what the law is, even if they be only read as a part of his argument.
3. It is assigned for error that the court refused to sustain -the challenge for cause, of F. Koenker, who was examined as to his competency as a juror. As we understand it, the sole ground of error alleged is, that after the witness had stated that he had .formed an opinion (from the reading of newspapers only), as to the guilt of the defendant, that the court did *556 not in the examination then made by him of the juror, ask him the identical question which is mentioned in the statute. We think it was substantially done, both by court and counsel — that when done by counsel in the hearing and with the implied sanction of the judge, and the answer is satisfactory, that this is sufficient. No exception, however, was taken to this action at the time, and it can not be a ground of reversal.
4. The court during the trial received the evidence of one Felix Stickman, over the objection and exception of defendant. Several days after this the defendant’s counsel moved the court to exclude it from the jury, which was done, and the jury instructed accordingly. The evidence was incompetent, as found by the court. It is, however, claimed that it operated to the prejudice of defendant to receive it, and that its withdrawal several days afterwards, did not cure the error.
We think this question is settled by the decision of Mimms v. State of Ohio, 16 Ohio St. 222, which holds that “where the court improperly overruled the objection of the defendant to testimony offered on the trial by the state, the judgment against him will not be reversed for such erroneous ruling, when the court, on motion of the defendant, excluded all the testimony so- given from the consideration of the jury, and instructed them that it must be' whollygdisregarded.” This is exactly what was done in this case.
We can readily see that the introduction of some kinds of incompetent evidence might be of such a character as greatly to prejudice a defendant, and that in such case its withdrawal would not rectify the injury done, and that it would be proper for a new trial to be granted under such circumstances. But we see no such thing in this case. One of the grounds of the motion to exclude it was, because it was irrelevant and nothing of a criminal nature on the part of defendant was proved by it, and this we think was so, and the evidence could not have prejudiced the defendant when withdrawn, a swas done.
5. After the jury was sworn, and before any evidence was heard, the defendant moved the court to require the state to abandon the~second count of the indictment,; alleging|as the reason of the motion (but which was not shown, or found by *557 the court to be true), that on the former trial of the case, the prosecuting attorney had abandoned the second count, and the court had instructed the jury to return a verdict of not guilty ■thereon, which had not been done. The two offenses were properly joined under Sec. 7227. Even if the facts claimed had appeared on the record, unless a nolle prosequi had been entered by the state, the prosecuting attorney was at liberty ■on the last trial to have the count stand, and convict the defendant thereon, if he could.
6. Exception was taken to the refusal of the court to charge the jury as requested by counsel for defendant, before the argument of the case commenced.
As appears from the bill of exceptions, the court, after the evidence was concluded, and before the argument to the jury ■commenced, was asked by defendant’s counsel to give thirty-four separate and distinct propositions of law to the jury. The court declined to give any one of them, in the form presented by counsel, adding at the foot of each in writing some remark • or reason for not doing so. As to a great number of them, the statement was, “ given in another form ” — others refused with a reason therefor — and the same course was taken as to ten charges asked for by the state. The court then, before the argument, gave to the jury, in its own language, eleven special charges, in answer to the requests made; and it is claimed that this is a manifest violation or evasion of the provisions ■of sec. 7300, Rev. Stats., pointing out the mode of procedure in the trial of criminal cases.
In the case of Wm. Clark v. The State of Ohio, in a decision announced today, we have had occasion to express, to some ex•tent, our views as to the duty of a trial court under this same provision of the statute, sec. 7300, clause 5. We held that it was plain, both from the language of the statute, and the decisiop of the supreme court in the McHugh case, 43 Ohio St., construing it, that if a proper charge is asked to be given before the argument, it must be then given, either in the form dn which it was presented, or in substance'in other language, .and if refused that it was error on the part of the court. And -we took occasion then to say, and now repeat it, substantially, (that in our judgment, it is a wise and safe practice, if the *558 charge presented is unobjectionable, to give it in the form desired. For, if the whole structure of the charges so presented is changed, there is great risk that some proposition or phase of the law, which counsel deems important should be submitted to the jury, and which is embraced in his request, will, in the haste and hurry of the trial, and when the judge, from the nature of the circumstances surrounding him, has not the opportunity to carefully weigh the meaning to be given to the language used, be omitted from the charge as given. It is well known to all who have had experience in such matters, that not at all infrequently, it is a most difficult and perplexing duty of a reviewing court, where a charge entirely proper to-be given, has been asked and refused, and in its stead others given, to decide whether the latter contains the substance of the former — and as the statute simply requires a charge asked to be given or refused, it would seem that in ordinary cases, this is what had better be done. But still it is the undoubted right of the judge, if from any cause he sees proper to do so and thus assume the risk of which we have spoken, to pursue the other plan, and undertake to give the substance of correct-charges asked, in his own language, and he may also, without such risk, modify an incorrect charge, and one which he is not legally required to give, to make it state correct propositions of law applicable to the case.
We think it evident, however, that this clause of the section was not intended to provide for a general charge to the jury before the argument of the case, but that the judge should confine himself, as nearly as may be, to the presentation of the law on the -points as to which his instructions are requested, if he choses to avail himself of his privilege of giving them in other language. We have deemed it proper to say what we have, in view of the difference in the practice of different courts, and with a view to a more uniform practice in this regard.
In this case, as has been said, the court in response to the application of counsel for the state and the defendant, that forty-four special charges should then be given to the jury, gave to them eleven only, substantially in its own language, the whole structure of the propositions asked for being changed.
*559 We take it for granted that the counsel for the defendant in their arguments have urged upon us the only instances in wliich they claim that the charges asked were not substantially given by the court, and we notice these in the order-stated in the arguments.
They had asked the court to charge the jury as follows: “ Before the defendant can be found guilty, every juror must be convinced or satisfied beyond a reasonable doubt, of the guilt of the defendant, as charged in the indictment.” This wasindorséd by the judge, “ given in another form.”
Two questions arise on this exception — the first is, was it right and proper in all respects, and one which ought to have-been given; and the second, was it given in substance by the court ?
We are of the opinion that the proposition of the charge was sound law, applicable to the case, and that the defendant-had the right to have the jury so charged — that it states a principle recognized by every one to be true. Forsyth in his work on “ Trial by Jury,” page 207, states the doctrine-thus ; “ Each juryman is bound under the solemn sanction of an oath, to decide according to his own honest and sincere conviction. He has sworn that he will well and truly try,, and a true verdict give according to the evidence, so help him God! He can not devolve the responsibility upon another, by adopting, without agreeing in,- the opinion of that other;, and so long as he conscienciously thinks differently, he is bound, whatever be the consequences, to adhere to his own opinion. That this is not the common practice with jurors-may be admitted; but their duty is not the less clear and imperative.” And Judge Wright, in the charge given by him to the jury in the case of the State v. Town, reported in Wright’s Rep. 75, in speaking of the question of reasonable-doubt, goes far beyond this, and says: “They should only convict when convinced beyond a reasonable doubt of guilt.. The doubt of any one juror,- honestly entertained upon the-evidence, should acquit the prisoner.”
But manifestly this last statement, of the law must be incorrect, and could not have been intended by the court. .The-doctrine, that if one of the twelve jurors entertains a reasona *560 ble doubt of the guilt of a defendant on trial, the eleven others who may have no such doubt, but are clearly satisfied of his guilt, should, for this- reason, abandon, their own convictions, and agree to a verdict of not guilty, cannot be right. It must have been intended to say, that so long as any one of the jurors entertained such reasonable doubt of defendant’s guilt, that there could not properly be a verdict of guilty by the jury, which is the doctrine of the charge asked for in this case, and is, as we esteem it, the true one.
Was this given in substance by the court? The jury certainly was charged in a number of places on this subject, and told “ that the law presumes the defendant to be innocent of the charges, and this presumption is only overcome by full proof, such as will exclude all reasonable doubt of her guilt.” And again: “ If the whole evidence, when carefully weighed, .produces in the minds of the jury a settled conviction of her guilt, — a conviction such as a reasonable man would not hesitate to be controlled by, or act upon in the most important matters relating to his own affairs, — then the jury are free from reasonable doubt.” “ If, however, it leaves the minds of ■the jury in such a state of doubt as to her guilt, as would deter a reasonable man from being controlled by it,” * * * “ such a doubt would be a reasonable one.” “ The proof must satisfy the jury beyond all reasonable doubt.” Certainly there •can be no objection to the correctness of these statements thus made to the jury, but the point is whether they sufficiently met the request as made, viz., that the instruction should be, that if one or more of the jury entertain such reasonable ■doubt, that the defendant could not properly be convicted. We are of the opinion that they do not — that the charge •given, was not in substance that asked for, and that the court ■erred in refusing it.
Objection is also made to the refusal to give the charge requested, as to the proof of identity of the defendant with the person who shipped the chains to New York; but we think it was substantially done. It is urged that the court erred in refusing to give the charge asked for, on the proof of the body •of the crime, and this will be noticed hereafter in what we •have to say on that subject.
*561 7. It is also assigned for error that there was misconduct on the part of the prosecuting attorney and his assistant in the argument to the jury, in this, that statements were made by them in regard to the defendant not warranted by the evidence, in charging her with being a professional shop-lifter — that she had not called as a witness in her favor, her co-defendant, Mary Smith — that she herself had never at any time denied the truth of the charge against her; and that such arguments were allowed by the court, over the objection of defendant’s counsel, and were to the great prejudice of defendant.
We think that very considerable latitude is to be given to counsel in the argument of a case, and that the court ought not to interfere if it is at all legitimate and there is any evidence which tends to support the theory of counsel. We think that the counsel for the state had some ground upon which to base an argument as to the profession of these women, and that the action of the court on this matter was not erroneous. As to the other matters complained of, the facts as they appear from the bill of exceptions, are substantially these : Mary Smith, who was indicted with the defendant, and who was in custody at the time, was in the court during the trial. She was not called as a witness by the state, and the defendant offered no evidence whatever. During the argument to the jury, the counsel for the state made frequent references to the fact, that the defendant had not called Mary Smith as a witness who, if she was innocent, could have shown it, as the ‘proof was that the two were together all of the time when the goods were purchased by them, and at the time the chains were alleged to have been stolen. Counsel for defendant objected to these statements, and asked the court to say that the jury must disregard them, which the court declined to do, and exception was taken.
The question thus presented is this : Whether in a criminal case, where -it appears that at the time of the alleged commission of the criminal act, a person jointly charged therewith was present, and might have been called by the defendant as a witness, and was not, this is a circumstance which may *562 be referred to in argument, or be considered by the jury. On 0,this point the authorities differ. - We think the rule as stated in Abbott’s Trial Brief, 152, is reasonable and correct, viz : “The mere omission to call a competent and available witness, who has some knowledge of the transactions, which if the claim of the party omitting is correct, would be favorable, and who is not adversely interested or biased, is a circumstance which the jury may consider.” See cases there cited. If this be so, it would seem also to be a legitimate subject of argument to the jury. Of course, if both sides refuse to call such witness, it might fairly be urged by either of the parties, and the weight to be given to it would depend upon the circumstances of each particular case, and largely upon the position which the witness occupies to each of the parties; for if adverse in interest to one of them, such party would hardly be expected to call such witness.
We think, therefore, that we would not be justified in reversing the judgment on this ground.
Did the attorneys for the state violate, in letter or in spirit, the provisions of section 7286, Rev. Stats., which provides, that on the trial of a criminal case, “ the neglect or refusal ” (of a defendant) “ to testify, shall not create any presumption against him, nor shall any reference be made to, or comment be made upon such neglect or refusal.”
On this subject the following statements were made by Mr. Thomas in his argument to the jury : “ If these articles (referring to those purchased by defendant and Mary Smith of Hellebusch and Isbell) are not the ones introduced in evidence and found in the express package at New York, where are they? Where is Mary Smith, that she is not called to the stand to deny it? Mary Smith does not deny what is testified to. We have not a word of denial from any body. If the articles were purchased for relations and Mends, why are not they produced upon the witness stand? ” * * “These people have been under arrest since December 15, 1887, and in jail here two or three months, and from the time of their arrest up to the time of going to trial, there has never been a word of denial from them.” Objection having been made to this remark by defendant’s counsel, the court in the hearing *563 of the jury said that the fact of defendant not testifying, must not create any presumption against her, and no reference thereto, or comment thereon, must be made. Thereupon Mr. Thomas disclaimed any reference or allusion to that fact, and the court then overruled the objection of defendant’s counsel, to which he excepted. Mr. Thomas in his further argument said, if the articles so bought at Hellebusch’s and Isbell’s were not those offered in evidence, that it would have been easy to produce them “that we hear not-a word of denial from any body.” * * * “If these women were innocent, would they not have said so when arrested?’■’ * * * “they have not since their arrest said one word of denial of their guilt. If they had not bought these things at Hellebusch’s and Isbell’s, don’t you think they would have said so, and have shown those they bought? Mary Smith could have told all about it — she could have explained all about it, and yet'there is nothing but absolute and impenetrable silence. Here we have Mary Smith, who might have taken the witness stand and told all about it.”
The foregoing is the substance of the remarks complained of, and the exact language in most instances. Did it infringe upon the rule laid down by the statute ?
Upon this question the court is not united in opinion. One of the members thinks it was objectionable — as, in effect calling the attention of the jury to the fact that the defendant might have been a witness for herself, and that hér failure to do so was to be taken against her — that while it is true that no direct statement of the kind was made, yet it was substantially done. There is force in the suggestion, but while we all agree that great care and caution should be exercised by counsel and court to see that nothing of the kind occurs at a trial, the majority of the court have reached the conclusion that there was no substantial and prejudicial infringement of the rights of the defendant in this behalf. It certainly was a perfectly legitimate argument.of the counsel for the state, that when these persons were arrested, and during their confinement in jail up to the time of the trial, when the matter was spoken of, that the defendant did not deny her guilt, or attempt ‘to explain away the circumstances of suspicion *564 against her. That if the articles produced in evidence and claimed by the state to have been bought by her on that day, and to have been found in New York in the same package with the chains alleged to have been stolen, were not those purchased by her, that she might have produced those so purchased. It is a delicate matter lo handle such evidence and still comply with the requirement of the statute, and it is possible that the language used by counsel is very near the line between propriety and impropriety; but on the whole, we do not think the necessary or true meaning of it was, that having the right to testify she had declined to do so, and that it was to be taken as an argument against her.
8. Ought the court to have granted a new trial for the reason that the verdict was not sustained by the evidence ?
It is manifest from the testimony in the case, that no witness saw the defendant or Mary Smith, who was with her, take the property in question. It may be conceded that the following state of fact is satisfactorily shown: that the gold chains charged to have been stolen, were about 9 o’clock in the morning of December 15th in the show case of Mr. Hellebusch — one of the clerks having about that hour shown them to another woman whom he did not know. That the defendant and her companion came to the store between 10 and 11 o’clock of that day, and were there for about half an hour, looking at various articles, and making purchases of the articles before referred to, viz., the sleeve buttons, small chain, child’s ring and a cane. During a part of this time they stood near to the case in which the chains described in the indictment had been seen, perhaps an hour and a half before that time, the lid of the case being probably open. There was nothing in their conduct while there to excite any suspicion, but the goods were missed more than an hour after they left the store.
If this was the whole of the evidence connecting the defendant with these chains, it is certain that it could not be rightfully claimed for a moment that it was sufficient to justify her conviction of the offense; even if the proof was that the chains were in fact stolen by somebody. It was sought, however, by the state, to show the fact that the larceny was com *565 mitted, and committed by the defendant, by proof that the chains in question, were in her possession about 2 P. M. of that day. The only evidence, however, which tended to show this, was that of Mr. Payne, the agent in this city of the American Express Co., as to the receipt of a package shipped to New York, as is claimed by the defendant, and the testimony of others as to what it contained, viz., the chains said to have been stolen, and the articles bought by defendant and Mary Smith on that day. The evidence of Mr. Payne was, that about 2 o’clock of that day a handsome and well dressed woman came into the Express office to have a package carried to New York, and which was marked and forwarded by him. But the difficulty in the case on this point is, that the witness does not pretend to say that this person was either the defendant, or her alleged confederate, Mary Smith. Strange to say, neither the counsel for the state, nor for the defendant, saw proper to ask him if it was either of these persons who brought the package there. But the prosecuting attorney, at'the argument of the casein this court, admitted the fact to be that although Mr. Payne on the day after the arrest of these persons had seen them, to determine whether he could identify either of them as the person who had the day before, brought to him the package for shipment, that he was unable to do so, though he had observed the appearance of the latter quite closely.
. It would seem then, that on the evidence as it was presented to the jury, a most important link in the chain of circumstantial evidence was wanting — rendering the othér evidence as to the contents of the package of much less value than it would have been if the defendant had been clearly identified as the person who shipped the parcel containing the chains claimed to have been stolen. On the trial.of a person on a charge of larceny, when it is shown that the goods were in fact stolen, and soon thereafter are found in the possession of a person, and there are other criminating circumstances against such person, as a refusal to account for such possession when it might he done, or the giving of a false account in regard to it, there is a presumption which the law recognizes, that the person in whose possession the goods are so found, was guilty of the larceny.
*566 But in this case, it is manifest that it is not shown by the testimony of Payne, that the defendant on that day, or ever, had possession of those chains. And no other witness says she had. The state however claims that on the evidence adduced it must be considered to be fully proved that she had possession of the goods in question, before they were expressed to New York, and it is based on this idea — that when the package so transmitted by some one, to New York, by the Express Co., was opened in that city by the police who had obtained the possession of it, that the ladies’chain, the child’s ring and the sleeve buttons bought by defendant and her companion at Hellebusch’s, and the stud purchased by them of Isbell, was found in it, with the chains alleged to be stolen. Now if this fact were certainly proven, it unquestionably would be a circumstance of suspicion against the defendant, when taken in connection with her conduct at the time of her arrest, and her refusal to give any account of herself; but we think that it can not be said, even then, that it would show her guilt beyond a reasonable doubt. There are so many ways in which the articles purchased might have been put there, consistent with the innocence of the defendant of the theft itself, that it would seem dangerous to predicate a verdict of guilty upon that fact alone. But in addition to this, it may be said, that on the evidence in the case there is much doubt whether all or any of these purchased goods were in the package in New York with the chains alleged to have been stolen. The difference in the inventories of the articles, made there, and in Cincinnati after their return to this city, is a circumstance of weight, and makes it doubtful whether such is the case. It is not shown by the evidence that those purchased goods were not in.the possession of these women when searched the evening of their arrest, — the articles of jewelry etc., upon their person having been taken from them and retained by the police officers — and it is not shown what became^of them. It may be said here on the subject of the identification of the defendant by Mr. Payne, as the person who shipped these goods to New York, that so important was it considered by the trial judge, that in the charge given to the jury he instructed them, that “so far as regards the question of the identity of *567 the defendant, if the jury believe from the evidence that there is a reasonable doubt whether the witness at the Express office might not be mistaken as to her identity, then before the jury would be authorized to convict the prisoner, the corroborating circumstances tending to establish her identity, must be such, or that other testimony produces such a degree of certainty in the mind of the jury, that they can say they have no reasonable doubt as to the identity of the defendant.”
As the testimony of Mr. Payne did not at all tend to identify the defendant as the person who delivered the package to him, it is difficult to see what other circumstances were disclosed in evidence which at all warranted the jury in finding, beyond a reasonable doubt, that it was the defendant who was at the Express office, and thus, under this instruction of the court, to authorize them to find her guilty.
Another question which arises upon the evidence, and logically it is the first and most important one, is this — was there sufficient proof that a larceny was in fact committed? If there was not, of course the verdict was wrong, and should have been set aside by the court. As has already been stated, there was no direct proof that it had been — no one saw the defendant or her companion do it, nor was there anything in their conduct there which seems to have excited the slightest suspicion on the part of any of the many clerks and employes in the store. All that is certainly known in regard to these chains is, that they were in the case, say at nine o’clock that morning. About that time one of the clerks had exhibited them to another lady who desired to see them. There is nothing to show that they were afterwards seen by any one in the store until their return from New York. They were not missed from their place in the case, until more than one hour after these women left the store. The most that can be said as to any connection of the defendant or Mary Smith with the chains while at the store is, that at one time they stood near the case in which the chains were kept, and while the person waiting upon them went some distance away to wrap up the cane they purchased, and if the chains were then in the case, that they might have abstracted them.
*568 In addition to this, there were on that day about twenty persons employed as salesmen in that store. Each one of these was authorized to make sales of any of the property, not at one particular place, but anywhere in the store room. Of these, but five or six were examined as witnesses. There was not any evidence to exclude the idea, that some one of these other persons had disposed of these chains to some one. Of course, it is not very probable we may say, that this was done; but it is possible that such may have been the case.
Was this then sufficient evidence of the larceny — the body of the crime? Without going fully into the discussion of the question, we may say that in view of the strictness of the law on this point, that we incline strongly to the opinion that it was not. The rule in criminal cases is, “ that there must be clear and unequivocal proof of the corpus delicti.” “The first thing to be shown is, that an offense has been committed.” “In larceny the essence of the corpus delicti is, that the property claimed to have been stolen, has been feloniously taken out of the prosecutor’s possession.” “I would never,” (says Lord Hale,) “convict any person for stealing the goods of a person unknown, merely because he would not give an account of how he came by them, unless there was due proof that a felony had been committed.” Burrill on Circumstantial Ev. 724; Best on Presumptions, 269; Wharton’s Crim. Ev. 324.
The cases of Rex v. Yond, 6 Carr. & P. 176; Rex v. Fellows, cited in 2 Russell on Crimes, 122; Tyner v. The State, 5 Humpreys, 383, and Carey v. The State, 7 Id. 499, are all to the effect that where property is claimed to have been stolen, and the proof of the larceny is not direct, and it appears that at the time of the alleged larceny there were several persons in control of it, that such persons should be called as witnesses to show that there was not a parting with the property otherwise than by theft. If this be the law, it would seem that it was not complied with in this case. We do not say that in all cases this is essential. There may be other circumstances which would render it wholly unnecessary — for instance one witness examined might conclusively show, that none of the other clerks was near where the chains were, or had any control of them at that time.
Yaple, Moos & McCabe and C. H. Blackburn, for plaintiff in error.
W. H. Pugh and Jordan Thomas, for the defendant in error.
The counsel for the defendant asked for a charge on this point which the court refused to give. It was this. No. 29. “ In the absence of direct evidence, I charge you that something more than the possession or control by defendant of the property alleged to have been stolen, is necessary to warrant conviction in this case, if you should find that Clemens Hellebusch had employes who on the day the alleged larceny was committed, had charge of and access to said property, and who could have been called to testify in this trial, regarding said property at said time, and who have not been called.”
Certainly the proposition is true as stated in the first paragraph of this charge, that in the absence of direct evidence, proof of possession b}? the defendant of the property claimed to be stolen, is not sufficient to justify a conviction — the addition of the paragraph, while not necessary or perhaps happy in expression, does not render it bad law, or improper to be given.
For the reasons assigned, we have arrived at the conclusion that the judgment should be reversed. We have not arrived at this conclusion readily, for the conduct of these parties was highly suspicious, and there is reason to believe that they may be guilty. But this is not sufficient, and we feel obliged in obedience to well settled principles of law, to hold that the conviction ought not to stand. The judgment will therefore be reversed, and the case remanded for a new trial.