## CONSTRUCTION OF THE SALARY LOAN ACT.

### Common Pleas Court of Cuyahoga County.

THE CLEVELAND COLLATERAL LOAN CO. v. JOHN C. BELL AND ARTIE W. BELL.

#### Decided, April, 1915.

*Usury Under the Haas Law—Promissory Note Drawing Eight Per Cent. Interest—Usurious When Payable in Installments Before the Principal Sum Becomes Due—Drastic Feature of the Haas Law— Usurious Note and Mrotgage Ordered Canceled.*

1. A promissory note is usurious although drawing only eight per cent. interest, where the stipulation is for eight per cent. on the "principal sum," which however is made payable in monthly installments during the year for which the note is made to run.

2. Where there is incorporated into the note a provision that, in case an action is brought in any court for its collection, a reasonable attorney's fee of not less than ten per cent. shall be included in any judgment entered by the court, the note is also rendered usurious by reason of that provision.

3. By the terms of the Haas bill such a note is void, together with the mortgage securing it, and in an action to enforce its collection a decree will be entered cancelling both the note and mortgage.

*Ammerman & Thompson,* for plaintiff in error.
*White, Crosser & Curtis,* contra.

GOTT, J.

This case comes into this court by way of error proceedings from the municipal court of the city of Cleveland. Plaintiff is a corporation and has taken out its license under favor of Section 6346-1-7 of the General Code of Ohio, generally known as the Haas Bill, for the purpose of making chattel loans.

Suit was brought in the court below by plaintiff upon the following note:

"$117.96     No........CLEVELAND, OHIO, November 28, 1911.

"Twelve months after date I promise to pay to the order of The Cleveland Collateral Loan Company, One Hundred and Seventeen 96/100, at 480 Prospect Avenue, payable in twelve

monthly installments of $9.83 each, beginning January 5, 1912. Balance payable............19.. with interest at eight per cent., per annum, payable annually after maturity. Upon failure to pay any installments or interest as they become due, the whole sum then unpaid on this note shall become due and payable, at the option of the legal holder hereof. In case this note be not paid when due and payable, and action is brought in any court to collect, a reasonable attorney fee of not less than ten per cent. shall be included in any judgment entered by the court.

"JOHN C. BELL.
"ARTIE W. BELL."

For a second cause of action the plaintiff set up a chattel mortgage upon certain furniture owned by the defendants and prayed for a foreclosure of the same. The court below found that the note was usurious, and construing Sections 6346-5 and 6346-7 of the General Code, held that the note, being usurious, was entirely void and that plaintiff could not recover upon it, and the court thereupon ordered a cancellation of both the note and the mortgage, and its action in so doing is now here for review.

There are two questions to be considered; first, was the note usurious? And, second, if it was usurious, can the plaintiff recover on the note and can it have a foreclosure of its chattel mortgage?

First, was the note usurious? Sub-section 5 of the act is as follows:

"No such person, firm or corporation shall make a loan upon chattels or personal property of any kind whatsoever, or purchase a salary or wage earning of another at a rate of interest or charge in excess of eight per cent. per annum upon the principal sum." In additional to such eight per cent. per annum a reasonable charge may be made for investigation, examination, collection and all other charges of whatsoever kind or description, not to exceed ten per cent. (10%) upon the principal sum, and any contract conveyance or assignment for the purpose or assignment of any salary or wage earnings and any loan upon chattels or personal property whatsoever shall be void and of no binding effect which provides for or contemplates the payment of any amount or sum in excess of the rates of charges herein provided for or where any provision of Section 3 (G. C. Sec.

6346-3) herein has been disregarded or violated.   In case any loan or contract of any kind provided for in the preceding sections is not paid when due, and interest of eight per cent. per annum may be charged on such balance due, but no extra charges shall be made for said renewal or extension of said loan or contract, within one year from the date of the loan or any renewal or extension thereof.''

What is the meaning of the language ''at a rate of interest or charge in excess of eight percent. per annum upon the principal sum?''   It might be observed in the first place that the matter of the rate of interest is entirely within the legislative control, and the Legislature may classify the money loaning business and fix a rate for each classification.  *Cramer* v. *Trust Company*, 72 O. S., 395; *Brooklyn B. & L. A.* v. *Desnoyes*, 4 C.C.(N.S.), 337.

The law has defined what is meant by interest and in 12 O. D., 405, it is defined as follows:

''Interest is the compensation which the law allows for the delay in the payment of an obligation after the maturity thereof.''

One of the common definitions of interest, and undoubtedly a correct one is found in the old arithmetics.   The court recalls the one in Ray's Third Part, Arithmetic:

''Interest is money paid for the use of money.''   The length of time it is to be used varies, but no matter what the time may be, we have an expression which is used as a basis for the rate in all cases, and that phrase is the Latin phrase *per annum,* meaning *by the year*.

Let us get at the underlying principle from a simple note:

''One year after date, I promise to pay to the order of John Doe, one hundred dollars with interest at 8 per cent, per annum, for value received.

''RICHARD ROE.''

Here Richard Roe is entitled to the use of one hundred dollars for one whole year, and for that he must pay John Doe eight dollars interest, usually at the end of the term, though banks get their interest in advance and it is called bank discount,

and other individuals may demand that the interest be paid either in advance, or semi-annually or annually without rendering the transaction usurious.

Section 5 says that the rate of interest was not to be in excess of "eight per cent. per annum" on the "principal sum." We have found that *per annum* means *by the year*. Now what does the statute contemplate by the words "principal sum"? I conclude that it means nothing more than the amount loaned by the year; not any charge to be added for investigation, examination, or collection as provided by the statute; not any interest to be added in advance, just the actual money loaned, and the rate per annum to be figured upon this actual loan.

The installment note is not of ancient origin. The law of negotiable instruments was made when the installment note was unknown. It does not fit in with the theory that eight per cent. per annum meant that the borrower was to have the use of the one hundred dollars for a whole year for the sum of eight dollars. What the installment note does is as follows: A borrower gets the use of one hundred dollars for the first month only, for at the end of the first month he makes a payment which lessens the principal, which the borrower is entitled to keep for the whole year, and so on from month to month as payments are made, the principal growing less and less, though the borrower, according to the statute and usage, is entitled to the use of the principal sum for the whole year.

The mere fact that, under an installment note, it is harder to compute the interest is no reason we should construe the statute in favor of the theory that the principal sum loaned per annum is the original sum loaned, though such original sum is used by the borrower for only a period of one month. The principal sum loaned on the note in question is as follows: $100 for one month, $90.17 for one month, $80.34 for one month, $70.51 for one month, and so on until the last payment is made. The problem in mathematics is more difficult, but with our present idea of interest, such must have been the legislative intent by the use of the terms "eight per cent, per annum upon the principal sum"; otherwise, "per annum" would be superfluous in the statute, would be without any meaning whatsoever.

It is said that Section 3 of the statute aids in the. construction of the statute. This section provides that the borrower shall be given a card which shall have written upon it the amount of the interest charged, and it is said that on the installment note you can not calculate the interest in advance so that the amount can be placed upon the note. This I have already demonstrated is not true, the only difference being it is more difficult to figure the interest on an installment note, but any good mathematician could develop a table by which it would be a simple matter to figure the interest on such a note.

The statute allows a charge of eight per cent, per annum upon the principal sum, and if the contention of the plaintiff is correct, by its arrangement on this note, it would have received nearly twelve per cent. upon the actual amount it loaned to the defendant, the difference of four per cent. being what plaintiff would gain by getting payment by installments in advance of the full year. The court therefore holds that the rate of interest provided in the note is in excess of eight per cent., and the note is therefore usurious.

The note also contains the provision that in the event action is brought in any court to collect, a reasonable attorney's fee of not less than ten per cent. shall be included in any judgment entered by the court, and the note is usurious also by reason of that provision. As far back as 10 Ohio, page 381, Wood, J., in the case of *State* v. *Taylor,* held that such a stipulation was against public policy and void. "It must be admitted," said the court, "if this agreement can be enforced, the statutes of Ohio regulating the rate of interest * * * are at once virtually repealed." This case is followed in the following cases in Ohio: *Shelton* v. *Gill,* 11 O., 417; *Martin* v. *Bank,* 13 O., 250; *Leavens* v. *Bank,* 50 O. S., 591.

Of course, the matter as to the rate of interest permissible being entirely within the legislative control, that body could, if it saw fit, provide for an additional charge for attorney fees in case of suit brought, but no such legislative enactment has been brought to my attention. Surely Section 8107 of the General Code, cited by plaintiff confers no such authority upon the money loaner. This section simply defines what is a sum certain within the meaning of the negotiable instrument act.

Reverting to Section 6346-5 it will be recalled that that section permits plaintiff to charge ten per cent. additional for *examination, investigation, and collection,* and it is admitted that such a charge of ten dollars was made in the note in question. Having had the ten per cent. allowed by the statute for collection, it is usurious to again stipulate for an attorney's fee for collection by court action.

Second. The note being usurious at the legal rate, may plaintiff recover upon it, and the interest at the legal rate, and may plaintiff have a decree of foreclosure upon his chattel mortgage, or is the note and mortgage securing the some illegal and void?

I think that it will be admitted by every one that, under the general law in Ohio, the fact that a note was usurious did not prevent a recovery upon the note for the amount loaned together with the legal rate of interest. This matter has long been regulated by statute.

Section 8306 of the General Code, whose original history dates back to 46 Ohio Laws, page 55, is as follows:

"Payments of money or property made by way of usurious interest, whether made in advance or not, as to the excess of interest above the rate allowed by law at the time of making the contract, shall be taken to be payments made on account of principal; and judgment shall be rendered for no more than the balance found due, after deducting the excess of interest so paid."

Our Supreme Court interpreted this section in a great many decisions, and I shall not take the time to quote from these decisions, but will cite them only, as the principle is too well established to admit of doubt. 10 O. S., 441; 22 O. S., 492; 12 O., 153; 29 O. S., 587; 39 O. S., 12; 41 O. S., 4; 50 O. S., 682.

Generally, then, in Ohio a usurious loaner of money could recover on the note the amount loaned. Has the Haas bill, socalled, changed the situation? There are two sections of the Haas bill that are inconsistent with each other, and our answer to this question depends upon which of the sections is to control.

Section 6346-5 contains the following:

"And any loan upon chattels or personal property whatsoever shall be void and of no binding effect which provides for or

contemplates the payment of any amount or sum in excess of the rates or charges herein provided for," and

Section 6346-7 is practically a re-enactment of the general law as found in Section 8306, General Code.

Sub-section 7 of the Haas bill is as follows:

"When the rate is usurious, payments of money or property made by way of interest, whether made in advance or not, shall be deemed and taken to be payments made on account of principal, or may be recovered in an action before a court of competent jurisdiction, and no judgment shall be rendered against the borrower in excess of the amount of the principal borrowed, still due."

· How shall the legislative act, which contains conflicting and irreconcilable provisions, be construed?

I had always understood that the clause which stood latest in position would control, but it seems that our Supreme Court, in the case of *State* v. *Mulhern*, 74 O. S., 363, has refused to follow this rule as laid down by Sutherland and other law writers, and has said that such rule of construction is purely arbitrary and not founded upon sound reason. The rule seems to be that:

"If the legislative intent can be gathered from the whole act, then that intent should govern, and other acts passed at the same session and other laws upon the statutes may be consulted in order to arrive at the legislative intent." ·

Looking at the act as a whole, and taking into view the other laws upon the statute books, can we ascertain the legislative intent, and if so, what is it?

Prior to the enactment of the Haas bill, we had Sections 9857 *et seq*. on the subject of "collateral loan companies," permitting them to loan on gold and silver plate and other goods and chattels at a rate not to exceed eight per cent. per annum, and a charge of not to exceed ten per cent. of investigation, collection, etc. There was no penalty for a usurious charge, and the loaner could recover on the note under favor of Section 8306, General Code, heretofore cited, his principal and the legal rate of interest, even though his rate was usurious.

The Haas bill under consideration is an addition to the existing laws. It adds to the duties of money loaners upon chattels—

1. By requiring them to take out a license.

2. By requiring them to give bond.

3. By compelling the loaner to give the borrower a card showing his transaction.

4. By compelling the loaner to have the wife of the borrower, if he be married, sign the contract, conveyance or assignment; and if the wife does not sign, the law renders the contract, conveyance or assignment absolutely void.

5. By making it a criminal offense, with a fine ranging from fifty to five hundred dollars, for violating *any* of the provisions of the statute.

6. By making under Section 5, which we are construing, any loan void and of no binding effect, when the contract provides for or contemplates the payment of interest in excess of eight per cent.

Is not the contention of the defendant, that the legislative intent was to render the note and mortgage void, strengthened by the fact that the act, without any equivocation, makes any violation of the law a misdemeanor punishable with the foregoing fine?

If the note in question did not bear the signature of the wife, is it not perfectly plain that by Section 4 the note would be void and of no binding effect, and is it not plain that under that circumstance the plaintiff could not recover upon the note?

It would seem that the legislative body not only desired to encourage the formation of reliable money loaning companies, but desired also to curb those who are not inclined to pay heed to laws regulating them, and to reach this latter class of persons these stringent features were added.

Since writing the foregoing opinion, there has been published the opinion of the Court of Appeals of Franklin County in the case of *Andrews* v. *State of Ohio* (21 C.C.[N.S], 284), in which that court construes some of the provisions of this act. In that case the court say:

"That the purpose of the legislation underlying the provisions of this act, was to simplify the salary loan business and make it impossible for loaners to oppress the dependent class by exorbitant charges and by excessive assignments of salary."

And that

"While it is true, as a general proposition, that doubtful provisions of criminal statutes are liberally construed in favor of a person charged with a criminal offense, yet this doctrine should not be carried so far as to destroy the efficiency and permit the evasion of the plain purpose of remedial acts. The business of making salary loans upon exorbitant charges, and upon written assignments for larger sums than were required to compensate the loaner, called for legislation."

This has been a test case, and the plaintiff has honestly believed that the note was not usurious, and I have no doubt but that plaintiff will comply with the law when it is finally established. It would seem to be rather unjust to permit one class of money loaners to make usurious loans, and then to permit them to recover upon the note the principal sum loaned together with the legal rate of interest, while another class of money loaners are punished by making the contract void, and a fine administered for doing the same thing, and yet perhaps the Legislature may have foreseen that a greater stringency is required over one class of loaners than there is over another.

It has been suggested to me that there may be a recovery for the amount of the loan in an action "for money had and received," but I am not called upon to pass upon that phase of the question, as this is a suit upon the note and for a cancellation of the mortgage, and is not a suit for money had and received, and it is sufficient in this case to pass upon the question of recovery upon the note and as to the foreclosure of the chattel mortgage. Inferring that the legislative intent is to punish the loaner on this class of loans by rendering his contract void if he shall charge a usurious rate of interest, as well as to create a new criminal offense for so doing. I have concluded that the judgment and decree of the municipal court is correct, and the same is affirmed, and will save exceptions for the plaintiff in error.