## STATE *vs.* FRANK BROWN, *alias* "GINGER." ·

*Criminal law—Homicide—Murder of first and second degrees— Manslaughter—Shooting at one Person but Killing Another— Self-defense—Reputation—Reasonable Doubt.*

1. Murder defined—different degrees. Manslaughter defined.

2. Where one person is killed by another, it is presumed by the law to have been done with malice aforethought, until the contrary is proved.

3. The ball fired from the gun or pistol at one person with an intent to wound or kill him carries with it the ingredient of malice when it strikes another and a different person. Malice goes with the ball and gives character to the action ; or as the rule is, malice speeds the ball whoever may be the victim.

3. In order to acquit under the plea of self-defense, the jury must be satisfied that the slayer was closely pursued by the other person and retreated as far as he conveniently and safely could, in an effort, and with an honest intent, to avoid the violence of the assault ; or that he was in imminent and manifest danger either of losing his own life or of suffering enormous bodily harm ; or that the circumstances were such that an ordinarily prudent man would have believed himself in such danger although such danger might not in fact have existed. The belief of the accused that he was in such danger is immaterial unless it coincides with what the belief of an ordinarily reasonable and prudent man would have been under such circumstances.

4. Proof of good character is to be considered by the jury as any other evidence tending to prove the innocence of the accused and is to be given just such weight by the jury as under the circumstances of the case it is reasonably entitled to in connection with all the other evidence.

5. Reasonable doubt defined.

*(November 14, 1902.)*

LORE, C. J. and GRUBB and PENNEWILL, J. J., sitting.

*Herbert H. Ward,* Attorney-General, and *Robert H. Richards,* Deputy Attorney-General for the State.

*Frank M. Davis* and *Henry Ridgely, Jr.,* for the defendant.

INDICTMENT FOR MURDER OF THE FIRST DEGREE.

At a Court of Oyer and Terminer in and for Kent County, beginning November 13, 1902, the defendant was tried for the felonious killing of one James Gilmore while he, the defendant, was attempting to shoot another colored man known as " Orangy " in a house in the town of Dover on May 28, 1900.

The evidence adduced on the part of the State tended to show that the prisoner on the Saturday previous to the killing, which was on Monday, had been severely beaten by the colored man " Orangy "; that later in the same day he purchased from the hardware store of T. K. Jones and Bro., in the town of Dover, a thirty-two calibre revolver, in company with one Masten, a colored man at whose house he was staying; that on the following Monday, during the forenoon, " Orangy," Gilmore and another colored man came to Masten's house, back of the post office, and asked permission to cook some food which they had purchased; that Masten gave them permission to do so; that the defendant, Brown, was then sitting in the kitchen trying to read a newspaper, which he claimed he could not read owing to the swollen condition of his

eyes as the result of the beating he had received at the hands of "Orangy" on the Saturday previous; that "Orangy" stayed in the front room while his companions were cooking their food in the kitchen; that when the same was cooked and placed upon the table, which was against the wall near the door leading from the front room to the kitchen, the defendant went out of the back door of the kitchen and around to the front door leading into the hall; that "Orangy," Gilmore and the other colored man then sat down to the table to eat their food, Gilmore sitting next to the door of the front room, "Orangy" on the side facing the wall and the other colored man at the opposite end of the table from Gilmore; that while eating their meal, Brown walked through the hall into the front room and stood in the kitchen door holding two revolvers and began firing at "Orangy;" that several shots were fired, one of which struck Gilmore in the heart, fatally wounding him, and that he lived but a short time thereafter; that Brown ran out of the house and across some open lots with "Orangy" in pursuit and that the latter fired several shots at Brown, which were not returned by Brown, he making his escape by jumping over a fence.

The State also offered evidence to the effect that the prisoner had stated to the detective who arrested him that he had an old revolver but that he was afraid of "Orangy" and that he bought one that he could depend on.

The prisoner denied that he had two pistols on the morning of the shooting, and stated that he bought the pistol in question for the purpose of protecting himself from tramps and not with the idea of shooting "Orangy"; that he was afraid of "Orangy" and that after the latter had beaten him "Orangy" had made threatening movements toward the prisoner when they had seen each other at various times and places, and that on the morning in question he went into the house to get some money from a pair of pants which were hanging on the wall in the room where "Orangy" and the others were eating and that as soon as he got to the door "Orangy" drew back his chair and pulled a revolver from his hip pocket and

began shooting at the prisoner and that he did actually shoot the prisoner and wound him in the hand and that he (the prisoner) also shot at " Orangy," but that it was done only in self-defense; that if he shot Gilmore he did not know it and did not intend to do so. Several witnesses testified that the reputation of the prisoner for peace and good order, in the community in which he lived, was good.

LORE, C. J., charging the jury :

Gentlemen of the jury :—Frank Brown, the prisoner at the bar, is charged with having shot and killed one James Gilmore, in a house back of the post office in this town, on the twenty-eighth day of May, 1900.

The indictment charges him with having committed murder of the first degree. Under this indictment, if the evidence should warrant, the jury may find any one of four verdicts ; (1) murder of the first degree, or in manner and form as he stands indicted ; (2) murder of the second degree ; (3) manslaughter ; or (4) not guilty.

So that it becomes necessary for the Court to charge you as to what constitutes the three grades of homicide—murder of the first degree, murder of the second degree and manslaughter.

Murder of the first degree is the killing of a human being with express malice aforethought, or in perpetrating or attempting to perpetrate any crime punishable with death ; that is to say, in general, where the homicide is committed with sedate, deliberate mind and formed design to take the life of, or to do some great or serious bodily injury to the person killed. Such design may be shown by the circumstances attending the act, such as the deliberate selection and use of a deadly weapon, a preconcerted hostile meeting, privily lying in wait, a previous quarrel or grudge, antecedent menaces or threats or the preparation of means to effect such a design or intent. That is murder of the first degree.

Murder of the second degree under our statute is where there is no such deliberate mind and formed design to take life, or to per-

petrate or attempt to perpetrate a crime punishable with death, but where nevertheless the killing was without justification or excuse or without provocation sufficient to reduce it to the grade of manslaughter.

Manslaughter is the unlawful killing of a human being without malice either express or implied but in the heat of passion, before the passions have time to cool. Malice is the essence of murder; in manslaughter there is no malice.

Under the law and the evidence in this case it is your duty to find by your verdict of which of these grades of homicide the prisoner is guilty, if of any.

Where one person is killed by another, unless it be under the sentence of the law, it is presumed by the law to have been done with malice aforethought, until the contrary is proved.

The law presumes the innocence of the accused—this is his protection and shield—until he is proven guilty beyond a reasonable doubt. A reasonable doubt is one that must grow out of the evidence alone; one that keeps your mind from reaching a clear conclusion of the guilt of the accused after a careful and conscientious consideration of all of the facts in the case, interpreting them in the light of the rules ordinarily governing human actions under like circumstances.

Another principle of law applicable to this case, is, that the ball fired from the gun or pistol at one person with an intent to wound or kill him carries with it the ingredient of malice when it strikes another and a different person. Malice goes with the ball and gives character to the action, or as the rule is, malice speeds the ball whoever may be the victim.

Another principle of law applying to this case is, that in order to acquit of a charge of this nature, under the plea of self-defense the jury must be satisfied that the slayer was closely pursued by the other person and retreated as far as he conveniently and safely could, in an effort and with an honest intent to avoid the violence of the assault, or that he was in imminent and manifest danger

either of losing his own life or of suffering enormous bodily harm, or that the circumstances were such that an ordinarily prudent man would have believed himself in such danger although such danger might not have in fact existed. The belief of the accused that he was in such danger is immaterial unless it coincides with what the belief of an ordinarily reasonable and prudent man would have been under such circumstances.

Proof of previous good character is to be considered by the jury as any other evidence tending to prove the innocence of the accused, and is to be given just such weight by the jury as under the circumstances of the case it is reasonably entitled to in connection with all the other evidence.

Taking these principles of law, as we have announced them to you, you are carefully and conscientiously to consider the evidence and to determine what verdict should be rendered. If you believe that Frank Brown fired the pistol with the ball which killed James Gilmore and that when he did so it was in pursuance of a sedate, deliberate mind and formed design to take life or to do some great and serious bodily injury to the person killed or to another person, and the person killed happened to be the one in the way, then we say to you that your verdict should be guilty in manner and form as he stands indicted. If you should believe, however, that the prisoner did kill Gilmore but not with sedate, deliberate mind and formed design, but with such a reckless disregard of human life as to be indifferent to the consequences of his act, then the law implies malice; and in that case your verdict should be guilty of murder of the second degree. But if you believe that the prisoner killed the deceased without justification or cause, without malice, in that case your verdict should be not guilty in manner and form as he stands indicted but guilty of manslaughter only. If, however, you should believe that he fired the ball that killed the deceased, and that at that time he was in imminent danger of his life, or of great bodily harm, and had retreated as far as he could to avoid any collision or attack, then your verdict should be not guilty.

You have the evidence before you, and to you we commend this case for you to return such a verdict only as under your conscience and your oath the evidene in this case shall warrant.

Verdict: "Not guilty in manner and form as indicted but guilty of manslaughter only, with a recommendation that the Court impose the full penalty of the law in such cases."