STATE OF NORTH CAROLINA v. WALTER JONES

No. 692SC378

(Filed 17 December 1969)

**1. Criminal Law § 164— refusal to nonsuit — assignment of error — evidence offered by defendant**

Where defendant offers evidence in his own behalf, his assignment of error must be directed to the court's refusal to grant his motion for compulsory nonsuit at the close of all the evidence. G.S. 15-173.

**2. Homicide § 14— presumptions from killing with deadly weapon**

When the killing with a deadly weapon is admitted or established, presumptions arise (1) that the killing was unlawful, and (2) that it was done with malice; and an unlawful killing with malice is murder in the second degree.

**3. Homicide §§ 4, 5— specific intent to kill — second degree murder**

A specific intent to kill, while a necessary constituent of the elements of premeditation and deliberation in first degree murder, is not an element of second degree murder.

**4. Homicide § 14— intentional use of deadly weapon — presumptions**

The intentional use of a deadly weapon, when death proximately results from such use, gives rise to the presumptions of unlawfulness and malice.

**5. Homicide § 21— second degree murder — sufficiency of evidence — physical facts — accidental death**

In this prosecution for second degree murder, the physical facts as dis-

closed by defendant's evidence did not clearly establish an accidental shooting, and the case was properly submitted to the jury where the State's evidence tended to show that defendant intended to shoot a third person but mistakenly shot and killed the deceased.

**6. Criminal Law § 76— inculpatory statements — Miranda warnings — necessity for voir dire — failure to object**

In this prosecution for second degree murder, the trial court did not err in allowing the arresting officer to testify as to inculpatory statements allegedly made to him by defendant without requiring the State to show that the *Miranda* warnings were given and that defendant freely, voluntarily and understandingly made the statements, where defendant did not object to the officer's testimony or in any way indicate that he desired an examination of the officer and findings by the court.

**7. Criminal Law § 115— submission of lesser degrees of crime charged**

Where there is evidence of defendant's guilt of a lesser degree of the crime charged in the indictment, the court must submit to the jury the issue of defendant's guilt of such lesser included offense, and the error of failure to submit such issue is not cured by a verdict convicting defendant of the offense as charged.

**8. Homicide § 30— second degree murder — failure to submit issue of manslaughter**

In this prosecution for second degree murder, the trial court did not err in failing to submit to the jury the question of defendant's guilt of the lesser included offense of manslaughter.

**9. Homicide § 2— intent to kill another — mistaken killing of deceased**

If defendant intended to assault a third person with a deadly weapon, but by mistake assaulted deceased with a deadly weapon, thereby proximately causing his death, the presumptions would arise that the killing was unlawful and with malice, and defendant's guilt is the same as though he had killed the third person.

APPEAL by defendant from *Fountain, J.,* 28 April 1969 Session, WASHINGTON Superior Court.

Defendant was charged in a bill of indictment, proper in form, with the felony of murder. Upon the case being called for trial the solicitor announced that the State would not seek a conviction of murder in the first degree, but would seek a verdict of guilty of murder in the second degree or any lesser included offense. Defendant entered a plea of not guilty.

The State offered evidence which tended to show the following: On 19 January 1969 defendant's wife and children had gone to the home of William and Juanita Hammie on West Water Street in the Town of Plymouth. The Hammie home was about three houses from defendant's home. The deceased, Jethroe Bonner, one William "Buddy" Boyd, and several other persons were also visiting in the

Hammie home. The deceased, Jethroe Bonner, lived next door to the Hammies. Jethroe Bonner left the Hammie house shortly before midnight to go to his home and about fifteen minutes later a shot was heard outside the Hammie house. When the light on the Hammie front porch was turned on, Jethroe Bonner was lying on the ground gasping for breath and defendant was "standing over him" with a shotgun in his hand. Defendant stated, "I shot the wrong man." The next day defendant told the arresting officer that he did not have anything against Jethroe Bonner and that he did not intend to shoot him, that he just made a mistake. He told the arresting officer that he had intended to shoot "Buddy" Boyd, but that he shot the wrong man. He further told the officer that he was standing about fifteen feet from Jethroe Bonner when the gun fired. Jethroe Bonner was dead upon arrival at the hospital. The cause of death was a wound in the chest from the load of one shotgun shell.

Defendant offered evidence which tended to show the following: "Buddy" Boyd had been "running around" with defendant's wife, and on several occasions had engaged in altercations with defendant. On the night in question, 19 January 1969, defendant went to the home of William and Juanita Hammie shortly before midnight to get his wife and children to come home. "Buddy" Boyd, who was also visiting at the Hammie residence, came out of the house and slapped defendant. A brief fight ensued. "Buddy" Boyd told defendant: "That's all right, you got me now but I will get something. I'll come back, I'm going to finish you off." Defendant then left the Hammie house and returned to his own home where he secured his shotgun. He obtained the shotgun to protect himself from "Buddy" Boyd. He then started back to the Hammie house to get his wife and children. As he walked along with the shotgun under his arm he did not see anyone. Jethroe Bonner suddenly grabbed the barrel of the shotgun, snatched the gun from under defendant's arm and it fired, the load from the shell striking Jethroe in the chest. Defendant did not see Jethroe Bonner until after he snatched the gun.

From a verdict of guilty of murder in the second degree, and from judgment of imprisonment, defendant appealed.

*Robert Morgan, Attorney General, by Richard N. League, Staff Attorney, for the State.*

*W. L. Whitley for defendant.*

BROCK, J.

[5] Defendant assigns as error the refusal of the trial judge to allow his motion for nonsuit renewed at the close of all the evidence.

Defendant strenuously argues that the physical facts as disclosed by defendant's evidence clearly establish that the shooting was accidental, that Jethroe Bonner himself caused the shotgun to fire when he snatched it by the barrel. He argues that the size of the wound and the lack of profuse bleeding clearly indicates that the shot was fired at close range, and that this physical fact shows that Bonner pulled the barrel to his own chest as defendant testified. However, defendant overlooks the fact that there is absolutely no evidence in this record to indicate the size of the wound, and no positive evidence of the amount of bleeding. Nevertheless, even if the shot was fired at close range, such a physical fact would also be consistent with the State's evidence that the defendant intended to shoot "Buddy" Boyd, but that he shot the wrong man. Defendant himself testified that it was extremely dark that night and this testimony would tend to explain a misidentification of an intended victim.

[1] It is true that defendant's evidence to some extent contradicts that of the State, but this conflict was for the jury, not the Court, to resolve. Where defendant offers evidence in his own behalf, his assignment of error must be directed to the Court's refusal to grant his motion for compulsory nonsuit at the close of all the evidence. G.S. 15-173; *State v. Cotten,* 2 N.C. App. 305, 163 S.E. 2d 100. And all of the evidence actually admitted, whether competent or incompetent, including that offered by defendant, if any, which is favorable to the State, must be taken into account and so considered by the Court in ruling upon a motion for nonsuit. *State v. Walls,* 4 N.C. App. 661, 167 S.E. 2d 547.

Defendant further argues that the State failed to offer evidence that defendant intentionally killed the deceased; he relies heavily upon *State v. Gregory,* 203 N.C. 528, 166 S.E. 387. The holding in *Gregory* has been amplified as follows: "In *S. v. Gregory* (citation) where the defense was that an *accidental* discharge of the shotgun caused the death of the deceased, it was stated that the presumptions arise only when there is an *intentional killing* with a deadly weapon; and since the *Gregory case* it has been often stated that these presumptions arise only when there is an intentional killing with a deadly weapon. But the expression, *intentional killing,* is not used in the sense that a specific intent *to kill* must be admitted or established. The sense of the expression is that the presumptions arise when the defendant *intentionally assaults* another with a deadly weapon and thereby proximately causes the death of the person assaulted. (Citations)" *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322.

[2-5] When the killing with a deadly weapon is admitted or

established, two presumptions arise: (1) that the killing was unlawful; (2) that it was done with malice; and an unlawful killing with malice is murder in the second degree. *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889; *State v. Gordon, supra.* A specific intent to kill, while a necessary constituent of the elements of premeditation and deliberation in first degree murder, is not an element of second degree murder. *State v. Meadows*, 272 N.C. 327, 158 S.E. 2d 638; *State v. Gordon, supra.* The intentional use of a deadly weapon, when death proximately results from such use, gives rise to the presumptions. *State v. Gordon, supra.* When considered in the light of the foregoing principles, and viewing the evidence in the light most favorable to the State, giving to the State the benefit of every reasonable inference that may be drawn, as must be done in passing upon a motion for nonsuit, *State v. Adams*, 2 N.C. App. 282, 163 S.E. 2d 1, we hold that the State's evidence was sufficient to require submitting the case to the jury.

[6]    Defendant argues that he is entitled to a new trial because of error in allowing the arresting officer to testify as to inculpatory statements allegedly made to him by defendant without requiring a showing by the State that all of the *Miranda* warnings were given and that defendant freely, voluntarily and understandingly made the statements. Defendant did not object to the officer's testimony; nor did he in any way indicate that he desired an examination of the officer and findings by the trial judge upon the question. Defendant was content to allow the officer to relate his statements, and he cannot raise this objection for the first time on appeal. *State v. Vickers*, 274 N.C. 311, 163 S.E. 2d 481. We note also that William Hammie, as a witness for the State, testified, without objection, that defendant told him at the scene, "I shot the wrong man."

[7, 8]    Defendant assigns as error that the trial judge refused to submit to the jury the question of defendant's guilt of the lesser included offense of manslaughter. "Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, . . ." G.S. 15-170. Where there is evidence of defendant's guilt of a lesser degree of the crime charged in the indictment, the court must submit to the jury the issue of defendant's guilt of such lesser included offense, and the error of failure to submit such issue to the jury is not cured by a verdict convicting defendant of the offense as charged. *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652. However, the necessity for submitting to the jury the issue of defendant's guilt of a lesser included offense arises when and only when there is evidence from which the jury could find that

such included crime of lesser degree was committed. The presence of such evidence is the determinative factor. *State v. Jones,* 264 N.C. 134, 141 S.E. 2d 27; *State v. Williams,* 2 N.C. App. 194, 162 S.E. 2d 688. In this case there is no evidence that requires submitting to the jury the issue of his guilt of voluntary manslaughter. Also, there is no evidence of culpable negligence in his handling of the shotgun, and therefore the issue of his guilt of involuntary manslaughter does not arise. Upon the evidence in this case we hold that the trial judge was correct in refusing to submit an issue of manslaughter to the jury.

Defendant assigns as error several portions of the trial judge's instructions to the jury. We have considered the instructions in their entirety, and when read contextually, as must be done, we perceive no error prejudicial to defendant.

**[9]** If defendant intended to assault "Buddy" Boyd with a deadly weapon, but by mistake assaulted Jethroe Bonner with a deadly weapon, thereby proximately causing Bonner's death, the presumptions would arise that the killing was unlawful and that it was done with malice; and defendant's guilt is the same as though he had killed "Buddy" Boyd. See *State v. Heller,* 231 N.C. 67, 55 S.E. 2d 800; *State v. Burney,* 215 N.C. 598, 3 S.E. 2d 24.

Defendant strongly contended, and his evidence tended to show, that Jethroe Bonner caused his own death by snatching the barrel of the gun to his chest and causing it to fire the fatal shot. Under proper instructions from the Court the jury considered defendant's contention of an accidental shooting, but they resolved the conflict in the evidence against defendant. In our opinion the evidence supports the verdict and the verdict supports the judgment.

No error.

BRITT and VAUGHN, JJ., concur.