# GLADDEN *v.* STATE OF MARYLAND

[No. 57, September Term, 1974.]

*Decided December 23, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Geraldine Kenney Sweeney, Assistant Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

In early March 1973 the petitioner, John Michael ("Box") Gladden, sold to his erstwhile friend Walter Edward ("Rabbi") Siegel [1] two ten dollar bags of heroin — at a discount — for $19. Disenchanted with the chemical quality of the contraband, Siegel, three or four days later, confronted his vendor in the privacy of a bathroom in a nearby tavern, and with a .22 caliber revolver as a persuader, recouped ten dollars and five bags of what he trusted might be better grade heroin. Needless to say, the petitioner, chagrined by such a forcible commercial transaction, vowed revenge and sought out Siegel on Saturday, March 10th, at yet another bar, there inquiring of Siegel's residence.

About 2:30 p.m. on March 12, 1973 the petitioner spotted Siegel then sitting on the front steps of a residence in the 2300 block Barclay Street, and approached him holding a "big black cowboy gun." A girl friend of Siegel, Patsy Quickly, was standing nearby; she shouted a warning and interposed herself between the antagonists, exhorting the petitioner not to kill Siegel and offering herself to pay him back one-half the money for the narcotics taken from him. [2]

---

1. They had known one another since 1971 when both were confined at the House of Correction.
2. With the gun pointed at her, and telling her "to get out of the way," he threatened to shoot her.

This brief interval permitted Siegel to take flight from the steps and, running south on Barclay Street, to seek cover behind a parked truck. The petitioner, in fresh pursuit, followed, and as they circled the truck Gladden, at intervals, wildly got off four or five shots from his .45 caliber gun without hitting his intended target. One of the projectiles struck the window sill of the premises at 2327 Barclay Street, two others struck nearby homes, and one, transiting the window at 2325 Barclay Street, pierced the chest of William Jeffrey Nixon, 12 years of age, a resident there, who was seated on the living room couch.

In his trial in the Criminal Court of Baltimore, upon an indictment charging him with the murder of young Nixon, the trial judge (Levin, J.) instructed the jury, *inter alia*, as follows:

"What is the situation where a person intends to kill one person but instead kills another person? To put it a different way, what is the situation when the deceased is not the intended victim? The law is that such a homicide partakes of the quality of the original act so that the guilt of an accused is exactly what it would have been had the shots been fired at the intended victim instead of the person actually killed. The fact that the person actually killed was killed instead of the intended victim is immaterial and the only question is what would have been the degree of guilt if the result intended had actually been accomplished. The intent is transferred to the person whose death has been caused.

If you find from the evidence and beyond a reasonable doubt that the defendant would be otherwise guilty of murder in the first degree of Mr. Siegel, and I have defined murder in the first degree, if you find from the evidence and beyond a reasonable doubt that the defendant would be otherwise guilty of murder in the first degree of Mr. Siegel, and if you find further beyond a reasonable doubt that the Nixon child died as a

result of a bullet or bullets striking him fired by this defendant, then you should find the defendant guilty of murder in the first degree."

Counsel for the petitioner filed a timely exception to the instruction, contending that "the doctrine of transferred intent is not the law of Maryland," and thus preserved the point for appellate review. *See* Maryland Rule 756 f and g.

The petitioner's conviction of murder in the first degree was affirmed by the Court of Special Appeals in *Gladden v. State*, 20 Md. App. 492, 316 A. 2d 319 (1974). Judge Moylan, who wrote the opinion for that court, stated: "We have no difficulty in deciding that 'transferred intent' is, and should be, a part of the common law of this State," and after pointing out that our courts had never ruled on the point, concluded: "We now hold that the doctrine of 'transferred intent' is the law of Maryland and that whatever *mens rea* a defendant entertains as to his intended target will carry over to any unintended victim, when the attack goes wide of its mark." Because the application of the doctrine of "transferred intent" was one of first impression in this Court we granted certiorari.

The petitioner contends that in the absence of a specific intention to kill young Nixon the doctrine of transferred intent was improperly applied and cannot be used as a substitute for the willfulness, deliberation and premeditation required to constitute murder in the first degree under Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 407. The statute reads as follows:

"All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree." [3]

---

**3.** Additionally, Maryland Code (1957, 1971 Repl. Vol.) Art. 27, by §§ 408 and 409 declares that all murder committed in the perpetration of, or attempt to perpetrate any arson and certain statutory burnings, shall be murder in the first degree; § 410 encompasses murder committed in the perpetration of, or attempt to perpetrate specified felonies; § 411 provides that "[a]ll other kinds of murder shall be deemed murder in the second degree."

For a homicide to be "wilful" there must be a specific purpose and design to kill; to be "deliberate" there must be a full and conscious knowledge of the purpose to kill; and to be "premeditated" the design to kill must have preceded the killing by an appreciable length of time, that is, time enough to be deliberate. *Robinson v. State*, 249 Md. 200, 238 A. 2d 875 (1968); *Howard v. State*, 234 Md. 410, 199 A. 2d 611 (1964); *DeVaughn v. State*, 232 Md. 447, 194 A. 2d 109 (1963), *cert. denied*, 376 U. S. 927 (1964); *Cummings v. State*, 223 Md. 606, 165 A. 2d 886 (1960), *cert. denied* 366 U. S. 922 (1961); *Kier v. State*, 216 Md. 513, 140 A. 2d 896 (1958); *Elliott v. State*, 215 Md. 152, 137 A. 2d 130 (1957); *Faulcon v. State*, 211 Md. 249, 126 A. 2d 858 (1956); *Chisley v. State*, 202 Md. 87, 95 A. 2d 577 (1953).

In order to sustain a conviction of murder in the first degree, as thus defined, the jury must find " 'the actual intent, the fully formed purpose to kill, with so much time for deliberation and premeditation as to convince them, that this purpose is not the immediate off spring of rashness and impetuous temper and that the mind has become fully conscious of its own design.' It is not necessary that deliberation and premeditation shall have been conceived or have existed for any particular length of time before the killing. Their existence must be judged from the facts of the case. . . ." *Chisley v. State*, 202 Md. at 106, 95 A. 2d at 586. *See also Hyde v. State*, 228 Md. 209, 215-16, 179 A. 2d 421, 424 (1962); *Cummings v. State*, 223 Md. at 611, 165 A. 2d at 888-89; *Faulcon v. State*, 211 Md. at 257-58, 126 A. 2d at 862-63. "If the killing stems from a 'choice made as a result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder.' " *Wilson v. State*, 261 Md. 551, 565, 276 A. 2d 214, 221 (1971). *See also Robinson v. State, supra; Tull v. State*, 230 Md. 596, 188 A. 2d 150 (1963); *Hyde v. State, supra; Dunn v. State*, 226 Md. 463, 174 A. 2d 185 (1961); *Cummings v. State, supra; Kier v. State, supra; Faulcon v. State, supra; Chisley v. State, supra*. This Court has held in *Wilson, Cummings* and *Chisley* that the firing of shots from a weapon interspersed by an interval of time was sufficient evidence of deliberation and premeditation.

Malice is an indispensable ingredient of murder — whether it be murder in the first or second degree; such malice may be express or implied. *Stansbury v. State*, 218 Md. 255, 260, 146 A. 2d 17, 20 (1958). As relating to murder it has been defined "as the intentional doing of a wrongful act to another without legal excuse or justification" and as including "any wrongful act done wilfully or purposely." *See Chisley v. State*, 202 Md. at 105, 95 A. 2d at 585. *See also Lindsay v. State*, 8 Md. App. 100, 104, 258 A. 2d 760, 763 (1969), *cert. denied*, 257 Md. 734 (1970). "In the absence [of evidence] of justification, excuse, or some circumstance of mitigation, malice may be inferred when there is an intent to inflict great bodily harm or when one wilfully does an act, the natural tendency of which is to cause death or great bodily harm." *Faulcon v. State*, 211 Md. at 257, 126 A. 2d at 862. Our predecessors have held "[a]n actual intent to take life is not necessary for a conviction of murder if the intent is to commit grievous bodily harm and death occurred in consequence of the attack." *Davis v. State*, 237 Md. 97, 104, 205 A. 2d 254, 258 (1964), *cert. denied*, 382 U. S. 945 (1965); *Webb v. State*, 201 Md. 158, 93 A. 2d 80 (1952). Thus, under our decisions, since the malice required for murder may be either express or implied, there is no requirement that a specific intent to kill, and thus express malice, exist; a person may commit murder without an actual intent to kill (express malice) for the law will infer or imply malice from the attendant circumstances in some unintentional killings. *See Cook v. State*, 9 Md. App. 214, 218, 263 A. 2d 33, 35, *cert. denied*, 258 Md. 726 (1970); *Lindsay v. State, supra.*

In our opinion there was ample evidence from which the jury could find the presence of malice, in that Gladden, without legal justification or excuse, was engaged in the "intentional doing of a wrongful act to another wilfully and purposely"; indeed, there was evidence from which the jury could have found on his part an actual intent to kill Siegel and thus express malice. As to whether or not the conduct of the petitioner was "wilful" and thus with a specific purpose and design to kill, and "deliberate" with a full and conscious knowledge of the purpose to kill, the evidence was equally abundant in that it was shown that the

petitioner possessed an enmity toward Siegel, arising from the antecedent episode between them when Siegel "held him up," that he had sought out Siegel, with drawn gun, and threatened to shoot Patsy Quickly, the bodily shield between him and Siegel, "if she did not get out of the way." Similarly, there was ample evidence from the pursuit of Siegel by the petitioner and the firing at him of four or five shots from his .45 caliber gun, interspersed by intervals of time, to persuade the jury that his conduct was premeditated. In short, if the petitioner's bullets had made their mark upon Siegel, there was sufficient evidence to support a verdict of murder in the first degree. Concededly young Nixon was unknown to the petitioner and as to him the petitioner possessed neither a motivation nor an express intention either to kill him or do him bodily harm. We must thus resolve the question as to whether or not the homicide of young Nixon — an unintended victim — partakes of the quality of the conduct and acts of the petitioner toward his intended victim, Siegel.

In 1776 the framers of the Constitution of Maryland adopted the common law as part of the law of this State. The provision in Art. 5 of the Declaration of Rights "[t]hat the inhabitants of Maryland are entitled to the Common Law of England" referred to the mass of the common law as it existed in England on the "Fourth day of July, Seventeen Hundred Seventy-Six" and as it prevailed in Maryland either practically or potentially, except such portions thereof as were inconsistent with the spirit of the Constitution and the nature of our new political institutions. *McGraw v. State,* 234 Md. 273, 275-76, 199 A. 2d 229, 230-31, *cert. denied,* 379 U. S. 862 (1964); *Lickle v. Boone,* 187 Md. 579, 582, 51 A. 2d 162, 163 (1947); *State v. Buchanan,* 5 Har. & J. 317, 358 (1821). Although the common law as it so existed is subject to revision, amendment or repeal by the Legislature, as is expressly provided in Art. 5, the ingredients and elements of murder are as they were at common law.

When by Ch. 138 of the Acts of 1809 the Legislature divided the crime of murder as it was known at common law into first and second degrees and attached penalties

therefor, no new statutory offense was created. *See Stansbury v. State, supra; Webb v. State, supra; Wood v. State,* 191 Md. 658, 62 A. 2d 576 (1948); *Abbott v. State,* 188 Md. 310, 52 A. 2d 489 (1947); *Hanon v. State,* 63 Md. 123, 126 (1885); *Davis v. State,* 39 Md. 355 (1874); *Weighorst v. State,* 7 Md. 442 (1855).

In *Stansbury v. State, supra,* Judge Henderson, who delivered the opinion of the Court, stated:

> "'We have held that the quoted sections [§§ 407 and 410] do not create any new crime, but merely classify murder, as it was known at common law, into degrees. *Wood v. State,* 191 Md. 658, 666; *Abbott v. State,* 188 Md. 310, 312; *Davis v. State,* 39 Md. 355, 374.... As used in the statute, the 'common law sense [of murder] is left unimpaired; the measure of punishment only is sought to be graduated according to the circumstances under which it was committed.' *Davis v. State, supra.*" 218 Md. at 260, 146 A. 2d at 20.

The so-called doctrine of "transferred intent" had its earliest roots firmly embedded in the English Common Law. As early as 1576, in *Reg. v. Saunders,* 2 Plowd. 473, 75 Eng. Rep. 706 (1576), it was stated:

> "And therefore it is every man's business to foresee what wrong or mischief may happen from that which he does with an ill-intention, and it shall be no excuse for him to say that he intended to kill another, and not the person killed. (c) For if a man of malice prepense shoots an arrow at another with an intent to kill him, and a person to whom he bore no malice is killed by it, this shall be murder in him, for when he shot the arrow he intended to kill, and inasmuch as he directed his instrument of death at one, and thereby has killed another, it shall be the same offense in him as if he had killed the person he aimed at, for the end of the act shall be construed by the beginning of it, and the last

part shall taste of the first, and as the beginning of the act had malice prepense in it, and consequently imported murder, so the end of the act, *viz.* the killing of another shall be in the same degree, and therefore it shall be murder, and not homicide only." 2 Plowd. at 474a, 75 Eng. Rep. at 708.

*See also Rex v. Brown,* 1 Leach C.C. 148 (1776); *Reg. v. Mawgridge,* Kelyng C.C. at 180 (3d ed. 1873) (case decided *circa* 1710); *Rex v. Plummer,* 1 Kelyng 109, 84 Eng. Rep. 1103, 88 Eng. Rep. 1565 (1701); *Williams' Case,* 82 Eng. Rep. 227 (1639); *Gore's case,* 9 Coke 81 (1611); *Mansell's case,* 2 Dyer 128b *(circa* 1555).

In *Rex v. Plummer, supra,* Holt, C. J., in setting forth the reasons for the judgment, is reported as stating: ". . . As if a man out of malice to A. shoots at him to kill him, but misses him and kills B. it is no less a murder than if he had killed the person intended. Dyer 128. (1) Cromp. 101. (2) Plowden's Com. 474. *Saunder's case,* 9 Rep. 81. *Agnes Gore's case."* 84 Eng. Rep. at 1104-05.

Sir Matthew Hale, in 1 History of the Pleas of the Crown,[4] in reviewing the application of the law of murder, commented at 466: "To these may be added the cases abovementioned, *viz.* if *A.* by malice forethought strikes at *B.* and missing him strikes *C.* whereof he dies, tho he never bore any malice to *C.* yet it is murder, and the law transfers the malice to the party slain; the like of poisoning, *sed de his supra cap."*

Sir William Blackstone, in 4 Commentaries on the Laws of England (Cooley, 3d ed., 1884), at 201 stated the common law rule to be:

"Thus if one shoots at A and misses *him,* but kills B, this is murder; because of the previous felonious intent, which the law transfers from one to the other. The same is the case where one lays poison for A; and B, against whom the prisoner had no

---

4. Published posthumously in 1736.

malicious intent, takes it, and it kills him; this is likewise murder."

In Clark and Marshall, A Treatise on the Law of Crimes § 10.06 (6th ed., 1958), at 578, the rule is stated as follows:

"Whenever an accountable man kills another intentionally, he is guilty of murder with express malice unless the killing is justifiable or excusable, or unless there are such circumstances of provocation as will reduce the homicide to manslaughter. This principle is applied when a man kills one person when he intended to kill another. For example, if a man shoots at one person with intent to kill him, and unintentionally kills another, or sets poison for one person and another drinks it and dies, it is murder with express malice of the person killed, though he is a friend."

Although admittedly the doctrine is of "ancient vintage," we do not agree with the petitioner's contention that under modern statutory classifications it is a "curious survival of the antique law" [5] requiring its rejection. It has lost none of its patina by its application over the centuries down unto modern times; its viability is recognized by its current acceptance and application.

With the exception of those few courts which, under their statutes (requiring the existence of express malice), hold that the malice necessary to constitute murder in the first degree does not exist when a homicide is actually committed upon one person by a blow aimed at another, there is a singular unanimity among the decisions in the overwhelming majority of the states that such a homicide "partakes of the quality of the original act, so that the guilt of the perpetrator of the crime is exactly what it would have been had the blow fallen upon the intended victim instead of the bystander. Under this rule the fact that the bystander was killed instead of the victim becomes immaterial, and the

---

5. Citing W. Prosser, *Transferred Intent,* 45 Texas L. Rev. 650 (1967).

only question at issue is what would have been the degree of guilt if the result intended had been accomplished." *See* 40 Am.Jur.2d *Homicide* § 11, at 302-03 (1968); 40 C.J.S. *Homicide* § 18, at 864-65 (1944); Annot., *Homicide by Unlawful Act Aimed at Another,* 18 A.L.R. 917 (1922).

*See also* 1 F. Wharton, Criminal Law and Procedure §§ 193, 246 (Anderson ed. 1957); R. Perkins, Criminal Law, Ch. 7 § 8, at 822-25 (2d ed. 1969); 1 O. Warren, Homicide §§ 73, 78 (1938); 2 O. Warren, *supra,* § 182; 1 J. Bishop, Criminal Law § 328 (9th ed. 1923); 2 W. Burdick, Law of Crime § 450 (1946); W. LaFave and A. Scott, Criminal Law, Ch. 3 § 35, at 252 (1972); Foster's Crown Law 261 (1809); 9 Encyclopedia of Laws of England 494 (2d ed. 1908); L. Hochheimer, Crimes and Criminal Procedure § 340 (2d ed. 1904).

The "transferred intent" doctrine has been consistently applied in Arkansas,[6] California,[7] Delaware,[8] Idaho,[9] Indiana,[10] Iowa,[11] Michigan,[12] Missouri,[13] New Jersey,[14]

6. *Arkansas*: Leonard v. State, 251 Ark. 1090, 476 S.W.2d 807 (1972); Lillard v. State, 236 Ark. 74, 365 S.W.2d 144 (1963); Johnson v. State, 214 Ark. 902, 218 S.W.2d 687 (1949); Henley v. State, 210 Ark. 759, 197 S.W.2d 468 (1946); Clingham v. State, 207 Ark. 686, 182 S.W.2d 472 (1944); Brooks v. State, 141 Ark. 57, 216 S. W. 705 (1919); Ringer v. State, 74 Ark. 262, 85 S. W. 410 (1905).

7. *California*: People v. Sears, 2 Cal. 3d 180, 84 Cal. Rptr. 711, 465 P. 2d 847 (1970); People v. Sutic, 41 Cal. 2d 483, 261 P. 2d 241 (1953); People v. Aranda, 12 Cal. 2d 307, 83 P. 2d 928 (1938); People v. Suesser, 142 Cal. 354, 75 P. 1093 (1904); People v. Carlson, 37 Cal.App.3d 349, 112 Cal. Rptr. 321 (1974); People v. Steward, 156 Cal.App.2d 177, 318 P. 2d 806 (1957); People v. McAuliffe, 154 Cal.App.2d 332, 316 P. 2d 381 (1957), *cert. denied,* 361 U. S. 920 (1959); People v. Neal, 97 Cal.App.2d 668, 218 P. 2d 556 (1950); People v. Walker, 76 Cal.App.2d 10, 172 P. 2d 380 (1946); People v. Buenaflore, 40 Cal.App.2d 713, 105 P. 2d 621 (1940).

8. *Delaware*: State v. Gardner, Del., 203 A. 2d 77 (1964); State v. Brown, 4 Penn. (Del.) 120, 53 A. 354 (1902); State v. Evans, 1 Marv. (Del.) 477, 41 A. 136 (1893).

9. *Idaho*: State v. Clokey, 83 Idaho 322, 364 P. 2d 159 (1961).

10. *Indiana*: Taylor v. State, Ind., 295 N.E.2d 600, *cert. denied,* 414 U. S. 1012 (1973).

11. *Iowa*: State v. Alford, 260 Iowa 939, 151 N.W.2d 573 (1967); State v. Mathews, 133 Iowa 398, 109 N. W. 616 (1906); State v. Williams, 122 Iowa 115, 97 N. W. 992 (1904).

12. *Michigan:* People v. Hodges, 196 Mich. 546, 162 N. W. 966 (1917); People v. Gordon, 100 Mich. 518, 59 N. W. 322 (1894); People v. Raher, 92 Mich. 165, 52 N. W. 625 (1892).

13. *Missouri*: Jones v. State, 471 S.W.2d 223 (Mo. 1971); State v. Batson, 339 Mo. 298, 96 S.W.2d 384 (1936); State v. Clark, 147 Mo. 20, 47 S. W. 886 (1898); State v. Pollard, 139 Mo. 220, 40 S. W. 949 (1897); State v. Renfrow, 111 Mo. 589, 20 S. W. 299 (1892); State v. Gilmore, 95 Mo. 554, 8 S. W. 359 (1888); State v. Payton, 90 Mo. 220, 2 S. W. 394 (1886).

14. *New Jersey*: State v. Bectsa, 71 N.J.L. 322, 58 A. 933 (1904).

North Carolina,[15] Ohio,[16] Pennsylvania,[17] and Washington [18] under statutes substantially indentical with the provisions of our Art. 27, §§ 407 and 411. Georgia,[19] Illinois [20] and South Carolina [21] have applied the doctrine under statutes which did not classify murder into degrees but which maintained the common law elements of the crime.

In Alabama,[22] Colorado,[23] Illinois (after statutory revision in 1962),[24] Mississippi,[25] New Mexico,[26] New York,[27] and Tennessee [28] the defendant's guilt has been adjudged to be of the same grade and degree of homicide by virtue of statutory provisions which include within their terms the commission of such a homicide designed to "cause or effect the death of the person killed or a third person," or "another," or "any human being."

---

**15.** *North Carolina*: State v. Rogers, 273 N. C. 330, 159 S.E.2d 900 (1968); State v. Davis, 223 N. C. 381, 26 S.E.2d 869 (1943); State v. Burney, 215 N. C. 598, 3 S.E.2d 24 (1939); State v. Dalton, 178 N. C. 779, 101 S. E. 548 (1919); State v. Cole, 132 N. C. 1069, 44 S. E. 391 (1903); State v. Fulkerson, 61 N.C. 233 (1867); State v. Jones, 6 N.C. App. 712, 171 S.E.2d 17 (1969).
**16.** *Ohio*: Wareham v. State, 25 Ohio St. 601 (1874).
**17.** *Pennsylvania*: Com. ex rel McCant v. Rundle, 418 Pa. 394, 211 A. 2d 460 (1965); Com. v. Lyons, 283 Pa. 327, 129 A. 86 (1925); Com. v. Johnson, 219 Pa. 174, 68 A. 53 (1907); Com. v. Breyessee, 160 Pa. 451, 28 A. 824 (1894).
**18.** *Washington*: State v. McGonigle, 14 Wash. 594, 45 P. 20 (1896).
**19.** *Georgia*: Wright v. State, 199 Ga. 576, 34 S.E.2d 879 (1945); Grier v. State, 158 Ga. 321, 123 S. E. 210 (1924); Durham v. State, 70 Ga. 264 (1883); Montgomery v. State, 78 Ga. App. 258, 50 S.E.2d 777 (1948).
**20.** *Illinois*: People v. Harrison, 395 Ill. 463, 70 N.E.2d 596 (1947), *cert. denied*, 334 U. S. 812 (1948); Butler v. People, 125 Ill. 641, 18 N. E. 338 (1888). By statutory revision effective 1962 an "unintended" victim is expressly within the provisions of the statute. See People v. Adams, 9 Ill.App.3d 61, 291 N.E.2d 54 (1972); People v. Forrest, 133 Ill.App.2d 70, 272 N.E.2d 813 (1971).
**21.** *South Carolina*: State v. Heyward, 197 S. C. 371, 15 S.E.2d 669 (1941); State v. Kennedy, 85 S. C. 146, 67 S. E. 152 (1910); State v. Smith, 33 S.C.L. 77, 47 Am. Dec. 589 (1847).
**22.** *Alabama*: Bradbury v. State, 170 Ala. 24, 54 So. 431 (1911); Gater v. State, 141 Ala. 10, 37 So. 692 (1904); Tidwell v. State, 70 Ala. 33 (1881); Tolen v. State, 49 Ala. App. 353, 272 So. 2d 279 (1972), *cert. denied*, 289 Ala. 752 (1973); Harris v. State, 46 Ala. App. 189, 239 So. 2d 331 (1970); Gettings v. State, 32 Ala. App. 644, 29 So. 2d 677, *cert. denied*, 249 Ala. 87 (1947).
**23.** *Colorado*: Henwood v. People, 57 Colo. 544, 143 P. 373 (1914); Ryan v. People, 50 Colo. 99, 114 P. 306 (1911).
**24.** *Illinois*: *See* n. 20, *supra*.
**25.** *Mississippi*: Barnette v. State, 252 Miss. 652, 173 So. 2d 904 (1965); Dykes v. State, 232 Miss. 379, 99 So. 2d 602 (1957).
**26.** *New Mexico*: State v. Griego, 61 N. M. 42, 294 P. 2d 282 (1956); State v. Carpio, 27 N. M. 265, 199 P. 1012 (1921).
**27.** *New York*: People v. Molineux, 168 N. Y. 264, 61 N. E. 286 (1901).
**28.** *Tennessee*: Harper v. State, 206 Tenn. 509, 334 S.W.2d 933 (1960).

Instructions submitting the same principle of law as was here submitted to the jury by the trial judge have been approved in *People v. Suesser,* 142 Cal. 354, 75 P. 1093 (1904); *People v. Walker,* 76 Cal.App.2d 10, 172 P. 2d 380 (1946); *People v. Buenaflore,* 40 Cal.App.2d 713, 105 P. 2d 621 (1940); *State v. Clokey,* 83 Idaho 322, 364 P. 2d 159 (1961); *People v. Harrison,* 395 Ill. 463, 70 N.E.2d 596 (1947), *cert. denied,* 334 U. S. 812 (1948); *Taylor v. State,* Ind., 295 N.E.2d 600, *cert. denied,* 414 U. S. 1012 (1973); *State v. Batson,* 339 Mo. 298, 96 S.W.2d 384 (1936); *State v. Pollard,* 139 Mo. 220, 40 S. W. 949 (1897); *State v. Renfrow,* 111 Mo. 589, 20 S. W. 299 (1892); *State v. Gilmore,* 95 Mo. 554, 8 S. W. 359 (1888); *State v. Bectsa,* 71 N.J.L. 322, 58 A. 933 (1904); *State v. Carpio,* 27 N. M. 265, 199 P. 1012 (1921); *Wareham v. State,* 25 Ohio St. 601 (1874).

In *People v. Sutic,* 41 Cal. 2d 483, 261 P. 2d 241 (1953), the Supreme Court of California, after stating that "[a] homicide is murder of the first degree when the accused, as the result of deliberation and premeditation, intended to take unlawfully the life of another. [Citations omitted]," reviewed the facts from which the jury could have concluded that the killing was "deliberate and premeditated" and stated:

> "The fact that not Mr. Borellano but rather his son was killed does not alter the situation. 'Where a person purposely and of his deliberate and premeditated malice attempts to kill one person but by mistake or inadvertence kills another instead, the law transfers the felonious intent from the object of his assault and the homicide so committed is murder in the first degree.' [Citations omitted.]" 41 Cal. 2d at 491-92, 261 P. 2d at 245.

In *Brooks v. State,* 141 Ark. 57, 216 S. W. 705 (1919), the Supreme Court of Arkansas, applying the principles of the common law under that State's statute to the homicide of an unintended victim, stated:

> "At common law, if a person shot at another with malice and by accident or mistake killed a

third person, the offense was murder. Under our statute a person will be held guilty of murder or manslaughter according to the circumstances of the killing, who, in the attempt to kill one person, by mistake kills a third person, although there was no intent or design to kill such third person. *Ringer v. State*, 74 Ark. 262; 21 Cyc. 712, and cases cited; Wharton on Homicide (3 Ed.), par. 360, and Michie on Homicide, vol. 1, sec. 17. The rule in such cases is comprehensively stated in volume 1, section 17, of Michie on Homicide, as follows:

'If a man attempt to kill another without justification, without provocation and not under circumstances of mitigation, and in pursuance of that effort hits and kills a third person, his guilt is measured by the same standard as though he had killed the person originally intended. Whether defendant who shot at one person and killed another is guilty of homicide in any of its grades, or not, depends on the character of his act, and his intent, whether criminal or not, as applied to the person whom he intended to shoot. *The thing done follows the nature of the thing intended to be done,* and the guilt or innocence of the slayer depends upon the same considerations that would have governed had the blow killed the person against whom it was directed. In determining *the criminality of the act of killing it is immaterial whether the intent was to kill the person killed or whether the death of such person was the accidental or otherwise unintentional result of the intent to kill some one else. The purpose and malice with which the blow was struck is not changed in any degree by the circumstances that it did not take effect upon the person at whom it was aimed.* The *purpose and malice remain,* and if the person struck is killed, the crime is as complete as though the person against whom the blow was directed had been killed, the lives of all persons being equally

sacred in the eye of the law, and equally protected by its provisions. The general rule is that when one person is killed by mistake or accident, the character of the offense is the same that it would have been if the person intended had been killed.' " (Emphasis supplied.) 141 Ark. at 60-61, 216 S. W. at 706.

In *Wareham v. State, supra,* the Supreme Court of Ohio used this rationale:

"The statutory definition of murder in the first degree is: 'That if any person shall purposely and of deliberate and premeditated malice . . . kill another;' whilst that of murder in the second degree is: 'That if any person shall purposely and maliciously, but without deliberation or premeditation, kill another.' The purpose or intent under either of these degrees is defined to be '*to kill another,' not to kill any particular person;* and hence, if a person purposely and maliciously strikes a blow with a deadly weapon, with intent to kill, and death ensues, this would be murder in the second degree, although the person striking missed the person against whom the blow was directed, and it took effect upon another. The intent to kill and the malice followed the blow, and if another was killed the crime is complete; and if deliberation and premeditation are added to the essential ingredients of murder in the second degree, the crime would be murder in the first degree." (Emphasis supplied.) 25 Ohio St. at 606-07.

Some courts succinctly analogize the doctrine by stating that "the intention follows the bullet," *see State v. Batson, supra, State v. Pollard, supra,* or "the malice was transferred or followed the bullet," *State v. Carpio, supra. See also State v. Brown,* 4 Penn. (Del.) 120, 53 A. 354, 355 (1902). Russell, C. J., for the Supreme Court of Georgia, in

*Grier v. State*, 158 Ga. 321, 327, 123 S. E. 210, 213 (1924), noted that the doctrine of transferred intent "is a principle so unquestioned as not to require the citation of authority."

The petitioner's reliance upon the holdings in *State v. Caterni*, 54 Mont. 456, 171 P. 284 (1918), *State v. Murray*, 11 Ore. 413, 5 P. 55 (1884), *Bratton v. State*, 29 Tenn. 103 (1849), and *Covert v. State*, 113 S.W.2d 556 (Tex.Cr.App. 1938), is misplaced. In *Caterni* the court held that the killing of one person undesignedly in the attempt to murder another, although not a guiltless homicide, was not murder in the first degree since under the Montana statute it was necessary to show "the deliberate premeditated design specifically to kill the person who was killed." [29]

The holdings in *State v. Murray, supra,* are contrary to the principle here urged by the petitioner. Murray was convicted of the first degree murder of one Jenke; he had lain in wait and intercepted his wife and the deceased en route home from a ball. He deliberately shot Jenke and shot at his wife. There was testimony that he had openly declared during the ball that he "would kill the man who should take his wife home that night." In the trial court his counsel, in urging that the appellant did not intend to kill the particular person killed, succeeded in having that court grant an instruction to the jury that "if they had any reasonable doubt as to whether the intention might not have been to kill the defendant's wife, or some person other than Alfred Jenke, and that, missing his aim, the defendant killed Alfred Jenke by mistake, then the crime is murder in the second degree." In holding that the instruction was erroneous, but that the appellant was not prejudiced thereby, the Oregon court stated:

"That was not the rule at common law, (Wharton's

---

**29.** Following that decision the legislature of Montana in 1919 amended and supplemented the provisions of § 8292 of the Montana Code to bring within the terms of its first-degree murder statute all murders "perpetrated from a deliberate and premeditated design, unlawfully and maliciously, to effect the death of any human being other than him who was killed."

Amer. Crim. Law, sec. 965. And I cannot see that the statute has changed it. Providing for two degrees of murder does not necessarily change the rule. The peculiar characteristic of the crime is malice. That must exist in either case, but in the case of murder in the first degree it must have been deliberate and premeditated. The term 'malice,' however, as used in connection with the crime, 'is not restricted to spite or malevolence, but is understood to mean that general malignity and recklessness of the lives and personal safety of others, which proceed from a heart void of a just sense of social duty, and fatally bent on mischief.' (3 Greenl. Ev. sec. 144.)

The assassin who lays in wait, harboring in his bosom a murderous design to slay a human being, cannot extenuate his offense because he did not kill the particular person he designed to. All the circumstances constituting murder in the first degree are present, and if he is guilty at all he is guilty of that crime, and there is no more reason for lessening the degree of the crime in consequence of that circumstance than there would be in acquitting him out and out. He has exhibited the same malignity and recklessness in the one event he would have displayed in the other, and the consequences to society are just as fearful . . . . " 11 Ore. at 419-20, 5 P. at 60.

In *Bratton,* although the Tennessee statute of 1829 declared, like our Art. 27, § 407, that "all murder which shall be perpetrated by means of poison, lying in wait or any other kind of wilful, deliberate, malicious and premeditated killing" shall be deemed murder in the first degree, the Supreme Court of Tennessee, contrary to the holdings of this Court, held that the statute of 1829 superseded the common law of murder and that under it to constitute murder in the first degree, there must exist, in the mind of the person who slays another, a specific intention to take the life of the person slain, and that if he, with premeditated intent to slay

one person, against his intention slay another, it will not be murder in the first degree.[30]

*Covert v. State,* although involving the offense of assault with intent to murder, stated by dictum that "it was settled law in Texas that where an accused shoots at one party and unintentionally kills another party he would be guilty of murder in the second degree." This is so since the Texas statute then in effect required the presence of "express malice" for first degree murder. *See Van Barnes v. State,* 57 Tex.Cr.App. 449, 125 S. W. 39 (1909); *Thomas v. State,* 53 Tex.Cr.App. 272, 109 S. W. 155 (1908); *Musick v. State,* 21 Tex.Cr.App. 69, 18 S. W. 95 (1886).[31] *Compare State v. Gardner,* Del., 203 A. 2d 77 (1964), where the Supreme Court of Delaware expressly declined to follow the Texas precedents, although their statute as amended in 1958 required the existence of "express malice aforethought" for murder in the first degree, and applied the doctrine of transferred intent where there was express malice aforethought directed toward the intended victim of the murder, but not in fact toward the actual victim.

The decisions in Montana (under *Caterni*), in Tennessee (under *Bratton*) and in Texas (under *Musick, Thomas* and *Van Barnes*) thus comprise those "few courts which, under their statutes, hold that the malice necessary to constitute murder in the first degree does not exist when a homicide is actually committed upon one person by a blow aimed at another," — and the minority view.

Equally non-persuasive is the petitioner's citation of *Com. v. Morgan,* 74 Ky. 601 (1876) and *Barnette v. State,* 252 Miss. 652, 173 So. 2d 904 (1965), since each involved the statutory offense of assault and battery with intent to kill and murder. In *Morgan* the court interpreted the statute to mean that "the same person shall be both shot at and wounded,"

---

**30.** Subsequent to the holdings in Bratton the Tennessee Legislature amended its statute defining felony-murder to include an attempt to perpetrate any murder in the first degree. See Sullivan v. State, 173 Tenn. 475, 478-81, 121 S.W.2d 535, 537 (1938). *See also* H. Baker, *Homicide and Self-Defense,* 15 Tenn.L.Rev. 288-290 (1938).

**31.** Texas, by statute, has more recently abolished the degrees of murder. *See* Mosley v. State, 149 Tex.Cr.App. 523, 196 S.W.2d 822 (1946).

and that the defendant could not be convicted of shooting and wounding one Buntin under proof to show that he shot at one Oliver. In *Barnette* the court held that the common law rule that where one crime is intended and by mistake another committed, the unlawful intent to do the one act is interposed to the other, did not apply to the statutory crime of assault and battery with intent to kill and murder; that such crime was unknown at the common law and that under the Mississippi statute the state was required to prove the intent to kill and murder the person specified in the indictment. The court recognized, however, that the doctrine of transferred intent was applicable under its first degree murder statute. *See Webb v. State,* 201 Md. 158, 93 A. 2d 80 (1952), where this Court held that to support a charge of assault with intent to murder there must be proof of both an assault and intention to murder, but that it was not necessary to show a specific intent to take life (express malice), and that if there were an intent shown to commit grievous bodily harm (implied malice) and death incurred in consequence of the attack, the case would have been murder in the second degree, and where death did not ensue, assault with intent to commit murder in the second degree. *See also Ruffin v. State,* 10 Md. App. 102, 268 A. 2d 494 (1970), where the appellant undertook to act in self-defense in firing two shots from a pistol in the direction of an adjacent apartment building in an effort to deter two persons from attacking him and an innocent bystander was struck by one of the bullets. The lower court, in acquitting the appellant of assault with intent to murder, inferentially applied the doctrine of "transferred intent" since the appellant was undertaking to act in self-defense (and thus his conduct under the law would be classified as excusable and without malice). His conviction, however, of common law assault and battery was sustained on the basis that his conduct was so grossly negligent as to constitute criminal negligence, from his use of the firearm.

The facts here are remarkably similar to those in *People v. Siplinger,* 252 Cal.App.2d 817, 60 Cal. Rptr. 914 (1967), *cert. denied,* 390 U. S. 983 (1968), where the appellant, preceding

the shooting, had demonstrated his hostility and his intent to inflict physical harm toward a female friend who had terminated her relationship with him. In seeking her out he followed her to her home, parked his car in the street, stepped out of the car with his gun in his hand and deliberately fired at her. She escaped his bullets by running into the house, but her sister, Dorothy Stevens, was fatally shot as she came out of the house, collapsing on the doorstep. The California court, in finding that his conduct toward his intended victim was premeditated and deliberate, applied the doctrine of transferred intent to affirm his conviction of murder in the first degree of Dorothy Stevens.

The petitioner's argument that the facts in this case do not bring it within the purview of Art. 27, § 407, since the language thereof limits its application to the "intended victim," overlooks the fact that the statute encompasses *all* murder "which shall be perpetrated . . . by *any kind* of wilful, deliberate and premeditated killing," and that under our holdings the statute did not create any new crime or elements of murder, but merely undertook to classify, for fixing the measure of punishment, certain murders, as known under the common law, as murder in the first degree. This argument was further answered in *State v. Bectsa, supra,* where the Court of Errors and Appeals of New Jersey said:

> "The statute is in these words: 'Murder which shall be perpetrated by means of poison, or by lying in wait, or *by any other kind of willful, deliberate and premeditated killing,* or which shall be committed in perpetrating, or attempting to perpetrate, any arson, burglary, rape, robbery or sodomy, shall be murder in the first degree; and all other kinds of murder shall be murder in the second degree.' *Pamph. L.* 1898, p. 824, § 107.
>
> In this statute the two concrete cases of murder in the first degree and the general description of the cognate class that immediately follows are all based upon *the existence of a certain condition of mind in*

*the perpetrator of the murder,* which, as to the concrete instances, is described by reference to the means employed or the method adopted, viz., by poison or by lying in wait, and as to the general class that follows, by the use of descriptive words of which the two concrete cases are something more than apt illustrations, being, by force of the word 'other,' criteria controlling the sense in which the more general terms are employed. It is clear, therefore, that murder, whether resulting under the special circumstances first detailed or evincing the state of mind afterwards described, is murder in the first degree without regard to any extraneous consideration, and that *the determining element in either case is the existence of the reprobated state of mind in the murderer and not the measure of success that attended its accomplishment.* . . . This is the plain meaning of the statute consistent with its entire spirit, interpreted by its own illustrations and sustained by the analogy it bears to the imputable quality at common law of the malice that is essential to the crime of murder." (Emphasis supplied.) 71 N.J.L. at 326-27, 58 A. at 935.

*See also Wareham v. State, supra.*

Since murder is homicide committed with malice aforethought petitioner's argument would necessitate the engrafting of an ingredient that such homicide must be committed "with malice aforethought *against the deceased"* — an element never required under the common law.[32]

Since it has been stated that the doctrine of "transferred intent" and the felony-murder rule, both based upon the existence of the element of "malice" and a "state of mind," had a common origin under the common law,[33] it would be illogical to conclude that where one's conduct gratifies the elements of willfulness, deliberation and premeditation

---

**32.** *See* R. Perkins, Criminal Law, Ch. 7, at 826 (2d ed. 1969).

**33.** *See* W. Ritz, *Felony Murder, Transferred Intent, and the Palsgraf Doctrine in the Criminal Law,* 16 Wash. & Lee L. Rev. 169-71 (1959), citing 4 Blackstone, Commentaries, at 200-01.

contained in Art. 27, § 407, and he accidentally kills another, he should be less guilty of murder in the first degree than one who, while perpetrating one of the felonies specified in Art. 27, §§ 408 and 409, accidentally kills in the course of the felony. *See Stansbury v. State, supra,* where this Court held that one perpetrating the felony of armed robbery was guilty of murder in the first degree regardless of the fact that he may have had no actual intent to discharge the weapon or that its discharge was accidental. *See also State v. Murray, supra,* where the conduct of the defendant "lying in wait" brought his act within first degree murder.

Although the use of the phrase "transferred intent" has been termed inaccurate — particularly where there is no requirement of the existence of a specific intent — the theory of the doctrine cogently stated is that "the state of mind which one has when about to commit a crime upon one person is considered by law to exist and to be equally applicable although the intended act affects another person." In homicide cases, therefore, the doctrine of "transferred intent" performs a function equivalent to that applied under the felony-murder rule.[34]

Put another way, "if one intends injury to the person of another under circumstances in which such a mental element constitutes *mens rea,* and in the effort to accomplish this end he inflicts harm upon a person other than the one intended, he is guilty of the same kind of crime as if his aim had been more accurate." In such cases all the components of the crime are present. The psychical element which consists of a certain general mental pattern is not varied by the particular person who may be actually harmed.[35]

Where, as here, there was evidence that the conduct of the petitioner, Gladden, in a reprobated state of mind, was willful, deliberate and premeditated toward Siegel, the *mens rea* for murder in the first degree was established, notwithstanding that the decedent was an unintended

34. *See* W. Ritz, *supra* note 33, at 171.
35. *See* R. Perkins, *supra* note 32, at 825.

victim. All the elements of an intentional first degree killing were present. His responsibility for the commission of conduct proscribed by the law cannot extenuate the offense because he did not kill his supposed enemy. The purpose and malice with which the shots were fired are not changed in any degree by circumstances showing that they did not take effect — because of bad aim — upon Siegel. Gladden's culpability under the law and the resultant harm to society is the same as if he had accomplished the result he intended when he caused the death of the innocent youngster. The punishment is imposed in accordance with the culpability of the accused under the law and justice is served by punishing him for a crime of the same seriousness as the one he undertook to commit.[36]

In *Jones v. State*, 188 Md. 263, 52 A. 2d 484 (1947), the issue of "transferred intent" was raised when the appellant, conceding the admissibility of his confession, contended that under it the evidence established that he thought he was shooting at one other than the one killed and thus there was insufficient time for deliberation. This Court did not pass upon the applicability of the doctrine since under the provisions of Art. XV, § 5, of the Maryland Constitution then in effect providing "in the trial of all criminal cases the Jury shall be the Judges of Law, as well as the fact," this Court at that time was precluded from passing upon the sufficiency of the evidence. Although the issue was left unresolved since that time, we now hold, upon the application of the principles of common law and the overwhelming weight of judicial authority, as did the Court of Special Appeals, that the doctrine of "transferred intent" is the law of Maryland and that the *mens rea* of a defendant as to his intended victim will carry over and affix his culpability when such criminal conduct causes the death of an unintended victim.

*Judgment of the Court of Special Appeals affirmed.*

---

**36.** *See* W. Ritz, *supra* note 33.